The Honorable Shane Broadway State Senator 201 Southeast Second St. Bryant, AR 72022-4025
Dear Senator Broadway:
I am writing in response to your request for an opinion concerning the possible application of the Arkansas Freedom of Information Act ("FOIA") (A.C.A. §§ 25-19-101 — 109 (Repl. 2002 and Supp. 2005)) to the "HVAC-Plumbing Examining Committee Recommendation Feasibility Joint Task Force" (hereinafter "Joint Task Force"). The Chairman of the Joint Task Force has provided the following background summary:
 As the Chairman of the [HVAC-Plumbing Examining Committee Recommendation Feasibility Joint Task Force], I am honored to be a part of this unofficial body, which is made up of four members of the HVACR Licensing Board, three members of the Plumbing Examining Committee and a representative of an industry group, the Arkansas HVACR Association. It should be noted that the members of the Joint Task Force do not make up a majority of either of the individual Boards they represent. The sole purpose for the creation of this joint task force is a very narrow one, that being to determine the feasibility of any move by one or both of these state entities to seek an independent status that would be outside their current home — the Arkansas Department of Health and Human Services — Division of Health. The charge of this joint task force is limited to only making a recommendation on the feasibility matter to both the Boards. The Joint Task Force has no authority other than this and cannot make any policy decisions. It is only empowered to make a specific recommendation, and this can only be made to the full HVACR Licensing Board and the Plumbing Examining Committee.
(Emphasis original).
Against this background, the following questions are posed:
 1. Must the meetings of the Joint Task Force be "open" at all times, regardless of the specific charge to the task force and the sensitivity of the matters that must be discussed in order to meet this charge?
 2. Can the meetings of the Joint Task Force be considered as "special meetings," since this task force does not meet on any type of regular or scheduled basis; has no official status as an entity of either state board; has no power(s) to make policy or in any way act on behalf of either Board that created it; and whose existence is determined only in the narrow charge that was given to it by the two controlling State Boards?
 3. Could any alternative interpretative situations come into play due to the fact that the Joint Task Force is made up of members from two completely separate state agencies; with there not being a majority of members from either of the Boards making up the composition of the Joint Task Force?
 4. Is there any process that the Joint Task Force could utilize that would ease the possibility of any "right to know" problems occurring, while at the same time providing a climate that is free of external pressures that, if allowed to be present, could inhibit the free and open discussion by the Joint Task Force of the charge that it was given?
 RESPONSE
In my opinion, the answer to your first question is "yes," based on the specific charge to the Joint Task Force as described in the material accompanying your request. As discussed more fully below, the specific charge is relevant to the question whether the meetings of the Joint Task Force must be open pursuant to the FOIA, whereas the sensitivity of the matters to be discussed does not bear on this issue. The answer to your second question is "yes," in my opinion. The meetings of the Joint Task Force would be considered "special meetings," as opposed to "regular" meetings, of the HVACR Licensing Board and the Plumbing Examining Committee, because they are not regularly scheduled meetings of either entity. The answer to your third question is "no," in my opinion. With regard to your fourth question, in my opinion there is no "process" by which to address concerns arising from the sensitivity of matters to be discussed by the Joint Task Force, other than the legislative process, that is, an amendment to the FOIA making an exception to the act's open meeting requirements for these meetings.
Question 1 — Must the meetings of the Joint Task Force be "open" at alltimes, regardless of the specific charge to the task force and thesensitivity of the matters that must be discussed in order to meet thischarge?
The specific charge to the Joint Task Force is relevant, in my opinion, to the extent it sheds light on the question whether the meetings could constitute meetings of the governing bodies (the HVACR Licensing Board and/or the Plumbing Examining Committee) that are represented on the Task Force. The FOIA's open meetings provisions, A.C.A. §§ 25-19-106(a) and-103(4), only apply to "governing bodies."See Op. Att'y Gen. 2006-059 (and opinion cited therein).[1] This means that groups that are advisory in nature may not be covered. See,e.g., Ops. Att'y Gen. 2006-059 (Chancellor Search Advisory Committee) and 2003-170 ("professional judgment panels" formed in connection with an educational adequacy study for the state). The open meetings requirement can, however, in my opinion, apply to meetings of advisory bodies that are composed in part of members of a governing body.See Op. Att'y Gen. 2000-260 (regarding an advisory executive committee of the Cross County Economic Corporation). As my predecessor acknowledged in the foregoing opinion, the analysis is a bit more complicated, in part because the Arkansas Supreme Court has not yet had occasion to address the question. I agree with my predecessor, however, that the following analysis would apply even to an advisory body that included members of the larger governing body and third parties:
 Board members can thus acquaint themselves with the issues involved in controversial subjects, hear those issues discussed and debated, and definitely form their conclusions without the particular issues being discussed at the board meeting at all. The concurring opinion by Chief Justice Adkins in the Florida case of Jones v. Tanzler, 238 So.2d 91 (the court having decided the case by a short per curiam), is pertinent to this question. There, the Chief Justice stated that a parent body could divide itself into groups of small committees, each member of the committee thus having a chance to commit himself concerning a matter on which foreseeable action would be taken by the parent authority, and the public would have no opportunity to be heard. It was then pointed out that the action of the entire parent body in a public meeting would thus be only an affirmation of the various secret committee meetings that had been held.
Op. 2000-260, quoting Arkansas Gazette Co. v. Pickens, 258 Ark. 69,75, 522 S.W.2d 350 (1975).
The factors identified above can apply with equal force, in my opinion, if an advisory committee comprises both governing body members and outsiders. The question is whether the group discusses matters upon which foreseeable action may later be taken by the governing body. This general principle derives from the case of El Dorado Mayor v. El DoradoBroadcasting Co., 260 Ark. 821, 824, 544 S.W.2d 206 (1976), which establishes that a quorum is not necessary to trigger the open meeting requirement.
In El Dorado, the court addressed a situation in which four of eight city council members met with the mayor and others to discuss a matter of public interest. The press was excluded from the meeting. The court held that the meeting should have been held openly, even though a quorum of the city council was not present. The court stated: "[W]e can think of no reason for the Act specifying its applicability to informal meetings of governmental bodies unless it was intended to cover informal but unofficial group meetings for the discussion of governmental business. . . . Any other construction would obliterate the word 'informal' as applied to meetings and make it simpler to evade the Act than to comply with it." 260 Ark. at 824. The court rejected the assertion that the FOIA should not apply where the members present could not act to bind the board in any way and could only engage in "discussion." Instead, the court took the position that the FOIA applies to any meeting of members of a governing body (whether of a quorum or less) called "for the purpose of discussing or taking any action on any matter on which foreseeable action will be taken by [the governing body]." Id.
Accordingly, in determining whether meetings of the Joint Task Force — an advisory body that includes members of the larger governing bodies — are "public meetings" under the FOIA, the focus in my opinion is on what the members discuss during their meetings, and the foreseeability of action by the HVACR Licensing Board and/or the Plumbing Examining Committee as a result of those discussions. The sensitivity of the matters discussed is irrelevant, in my opinion.Cf. Harris v. City of Fort Smith, __ Ark.__, 197 S.W.3d 461 (2004) (one-on-one discussions between city administrator and board members to approve a proposed real-estate purchase violated the FOIA's open meeting requirements, despite the board's "laudable purpose in acquiring the . . . property by confidential bid.") Nor is the absence of decision-making authority in the Joint Task Force a factor, in my view. Rather, the question is whether the members of the Joint Task Force discuss official business of the larger governing bodies, as a result of which the governing bodies could foreseeably take action.
From my understanding of the specific charge to the Joint Task Force, such discussions and ensuing action appear evident. Specifically, I note that the Task Force is described as a "working group within [the HVACR Board] and the Plumbing Examining Committee" whose purpose is to "determine the feasibility of any move by one or both of these state entities to seek an independent status that would be outside their current home — the Arkansas Department of Health and Human Services ["DHHS"] — Division of Health." Letters from Sam Cummings, Chairman, HVACR Licensing Board, and Bruce Blackall, Chairman, Joint Task Force, to State Senator Shane Broadway (October 9, 2006). Currently, the HVACR Board assists and advises the Division of Health on matters relating to HVACR licensing and on such other matters as requested by DHHS. A.C.A. §§ 17-33-202(3) and (9) (Supp. 2005).[2] The Committee of Plumbing Examiners ("the Committee") is currently appointed by the State Board of Health and its duties are prescribed by the State Board. A.C.A. §§17-38-201(a)(4) (Supp. 2005) and-202(a) (Repl. 2001).[3] The Committee may issue "temporary revocable permits" to plumbing license applicants. A.C.A. § 17-38-303 (Supp. 2005). But the State Board prescribes the rules and procedures in this regard. Id.
Presumably, the Joint Task Force's feasibility study entails or will entail a review and discussion of matters relating to HVACR licensing and supervision of plumbing, with an eye toward a restructuring of the foregoing powers, duties and functions of the HVACR Licensing Board and the Plumbing Examining Committee in relation to the Division of Health and the State Board of Health. Obviously, the HVACR Board and the Plumbing Committee cannot alone effect such a restructuring. It may be that the only action taken by these governing bodies is the adoption of a resolution or policy statement toward that end. Although I cannot speculate further regarding the anticipated action, I can and will opine that a foreseeable move to seek "independent status" as a result of the Joint Task Force study most certainly brings the Task Force's meetings within the FOIA. In my opinion, this constitutes "foreseeable action" as contemplated by the formulation in El Dorado, supra, notwithstanding the inability of the larger body to effect the desired outcome. This is no less a "meeting" under the FOIA than any other gathering of the members to discuss official business where anticipated action by the governing body will not alone achieve the desired end, such as, for example, meetings to discuss the possible settlement of disputes.
This conclusion is compelled, moreover, by the liberal approach taken by the Arkansas Supreme Court in construing the FOIA's provisions. When the General Assembly enacted the FOIA, it expressly stated the purpose of the act as follows:
 It is vital in a democratic society that public business be performed in an open and public manner so that the electors shall be advised of the performance of public officials and of the decisions that are reached in public activity and in making public policy. Toward this end, this chapter is adopted, making it possible for them, or their representatives to learn and to report fully the activities of their public officials.
A.C.A. § 25-19-102 (Repl. 2002).
The Arkansas Supreme Court has long and consistently taken the position that the FOIA "was passed wholly in the public interest" and should be construed liberally in favor of openness. Laman v.McCord, 245 Ark. 401, 404, 432 S.W.2d 753 (1968). The court has also expressed the view that "[w]hen the General Assembly used the expression "to learn and to report fully [our emphasis] the activities of their public officials," it meant not only the action taken on particular matters, but likewise the reasons for taking that action." Pickens,supra, 258 Ark. at 75. This view of the FOIA further compels the conclusion that discussions by members of the Joint Task Force leading to a decision to seek "independent status" of the larger governing bodies constitute "public meetings" under the FOIA.
Question 2 — Can the meetings of the Joint Task Force be considered as"special meetings," since this task force does not meet on any type ofregular or scheduled basis; has no official status as an entity ofeither state board; has no power(s) to make policy or in any way act onbehalf of either Board that created it; and whose existence isdetermined only in the narrow charge that was given to it by the twocontrolling State Boards?
In responding to this question, I find it necessary to first clarify that the significance of holding a meeting as a "special," versus a "regular" meeting, ordinarily has to do with the notice that must be provided.[4] A "special meeting," as opposed to a "regular" meeting, must still be held as an open meeting under the FOIA, unless it falls within the exception for "executive sessions," which are only permitted for the limited purpose of "considering employment, appointment, promotion, demotion, disciplining, or resignation of any public officer or employee." A.C.A. § 25-19-106(c)(1) (Supp. 2005).
With this in mind, I believe the meetings of the Joint Task Force would be considered "special meetings," as opposed to "regular" meetings, not because the Task Force has no "official status" and no decision-making power, but because its meetings are not regularly scheduled meetings of either the HVACR Licensing Board or the Plumbing Examining Committee. Although the FOIA does not define "regular" or "special" meetings (see A.C.A. § 25-19-106(a), supra at n. 1), the term "regular" meeting most likely refers to regularly scheduled meetings of the larger governing body. See J. Watkins R. Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT (mm Press, 4th ed. 2004) at 321.
Question 3 — Could any alternative interpretative situations come into play due to the fact that the Joint Task Force is made up of members from two completely separate state agencies; with there not being a majority of members from either of the Boards making up the composition of the Joint Task Force?
No. See discussion above. See also Watkins Peltz, supra at 290 (regarding the involvement of members of more than one public body in a meeting, stating that "a joint meeting attended by at least three members of one of the two governing bodies would fall within the [FOIA].")
Question 4 — Is there any process that the Joint Task Force couldutilize that would ease the possibility of any "right to know" problemsoccurring, while at the same time providing a climate that is free ofexternal pressures that, if allowed to be present, could inhibit thefree and open discussion by the Joint Task Force of the charge that itwas given?
There currently is no such process, in my opinion. The FOIA allows governing bodies to meet in executive session (i.e., in closed meetings) for the limited purpose of "considering employment, appointment, promotion, demotion, disciplining, or resignation of any public officer or employee." A.C.A. § 25-19-106(c)(1) (Supp. 2005). As currently drafted, the FOIA includes no exemption that would apply to meetings of the Joint Task Force. The Arkansas Supreme Court in Harris v. City ofFort Smith, supra, reached a similar conclusion regarding the city's attempt to purchase certain real property through a confidential bid. The court observed:
 [T]he FOIA as presently drafted will not permit approval of a confidential bid by the method used by the Board in this case. Whatever process might be needed to obtain public entity approval of the submission of confidential bids, and approval of the amounts of such bids, has not been exempted under the FOIA as currently drafted. Whether the process required to approve and submit confidential bids should be exempted from the FOIA is a public policy decision that must be made by the General Assembly and not by this court. Rehab Hospital, supra, was decided in 1985, and El Dorado, supra, was decided in 1976. The legislature could have acted in the intervening years to alter the FOIA, but has not done so to date. We must await legislative action before we can hold differently than in the present case. See, e.g., Burkett v. PPG Indus., Inc., 294 Ark. 50, 740 S.W.2d 621 (1987).
 197 S.W.3d 461.
Similarly, in my opinion, whether meetings of the Joint Task Force should be exempted under the FOIA is a policy decision for the legislature. The legislative process is the only available process by which to make an exception to the FOIA's open meeting requirements for these meetings.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE, Attorney General
[1] Subsection 25-19-106(a) (Supp. 2005) provides:
 Except as otherwise specifically provided by law, all meetings, formal or informal, special or regular, of the governing bodies of all municipalities, counties, townships, and school districts and all boards, bureaus, commissions, or organizations of the State of Arkansas, except grand juries, supported wholly or in part by public funds or expending public funds, shall be public meetings.
(Emphasis added).
Subsection 25-19-103(4) (Supp. 2005) states:
 "Public meetings" means the meetings of any bureau, commission, or agency of the state, or any political subdivision of the state, including municipalities and counties, boards of education, and all other boards, bureaus, commissions, or organizations in the State of Arkansas, except grand juries, supported wholly or in part by public funds or expending public funds[.]
[2] The HVACR Board also prescribes the licensing forms. A.C.A. §17-33-302(a)(2) (Repl. 2001). Application for licensure is made to DHHS (id.); and those who perform work under a HVACR license holder must be registered with DHHS. Id. at-303(c)(2).
[3] The State Board adopts the plumbing code and has "general supervision of all plumbing." A.C.A. §§ 17-38-103(a) and — 201(a)(2)(A) (Supp. 2005). The Director of the Division of Health or any employee of the Division designated by the Board may act for the State Board of Health, except in adoption of rules and regulations. Id. at — 201(a)(2)(B). No person may engage in work as a plumber "unless first licensed or registered to do so by the Division of Health . . . ."Id. at — 301(a)(1) (Supp. 2005).
[4] At least two hours' notice of special meetings must be provided to news media located in the county who have requested notice, and to news media located elsewhere that cover regular meetings of the governing body. See A.C.A. § 25-19-106(b)(2) (Supp. 2005). The time and place of regular meetings must be provided to anyone who requests the information. Id. at (b)(1). The FOIA does not set forth a time requirement for notice of regular meetings, but this office has opined that in order to be consistent with the purpose of the FOIA, a governing body "must give notice within a period of time that is reasonably sufficient to allow [those] who have requested notice to arrange to attend the meeting." Op. Att'y Gen. 98-033.