## LESTER *v.* WALKER.

Opinion delivered October 1, 1928.

*E. R. Parham,* for appellant.

*Owens & Ehrman* and *Miles & Taylor,* for appellee.

MEHAFFY, J. The Pulaski County Court entered an order directing the issuing to Gordon Walker warrants

in the sum of $16,576.70, to be made payable on the first day of September, 1929. An appeal was taken from the order of the county court, the petition for appeal alleging that the order was void for a number of reasons, but all of the objections to the order except one have been abandoned.

It was alleged that the county does not own the land on which the proposed jail is being constructed, and that the county was therefore without the authority to make the contract for the construction of the jail on said land.

The circuit court held that the order was valid, and that the county was the owner of the land. The case was tried in the circuit court on an agreed statement of facts, and the appellant in his brief says:

"Consequently, the only issue now before the court is whether or not the property now in dispute is the property of the county. Inasmuch as all other allegations were abandoned by the plaintiff upon the trial of the cause, we do not deem it necessary to set out the pleadings in full. The appellees both filed a reply, or answer to the petition, denying the allegations in plaintiff's petition, and asserted affirmatively that the county was the owner of the property upon which the jail is now being constructed. The issue therefore was properly joined in the court below as to whether or not the county was the owner of the property, and this is the only question before this court for determination."

Since this is the only question to be determined by this court, it is not necessary to set out the pleadings in the case.

Appellant's contention is that the city was without authority to pass the ordinance authorizing the conveyance of the property to the county, for the reason that it had already passed an ordinance, on April 14, 1924, which ordinance is as follows:

"Ordinance number 3476. An ordinance setting aside all city property or property controlled by the city on the river front, and holding same to be beautified and made into public parks, and for other such purposes.

"Be it ordained by the city council of the city of Little Rock:

"Section 1. That hereafter no leases or sales shall be made or extended on any land belonging to or controlled by the city of Little Rock on the river front, and all city lands on the river front shall from this date be held for public parks, to be improved, beautified, and made into parks for the use and benefit of the citizens of Little Rock.

"Section 2. All ordinances and parts of ordinances in conflict with this ordinance are hereby repealed, and this ordinance shall take effect and be in force from and after its passage."

The city of Little Rock owned a tract of land bounded on the north by the Arkansas River, and it is the contention of the appellant that all the land the city owned in that part of the city constituted the river front, or a part of the river front, and that therefore the property in controversy on which the jail is being constructed had already been dedicated to the public, and could not be sold by the city. We think, however, that the river front meant only that tract of land fronting on the river north of the Missouri Pacific railroad; that it was certainly not the intention of the council to make a park of land south of the Missouri Pacific railroad tracks. It had already sold to the county many years ago the land on which the present jail or old jail stands, and had never devoted or dedicated any part of the property south of the railroad tracks to the public. We think it would be unreasonable to hold that that part of the land owned by the city south of the railroad tracks was the river front mentioned in the ordinance; but, whether it was or not, we think the city had a right to sell the property in controversy to Pulaski County, notwithstanding the ordinance set out above had been passed.

It is insisted by the appellant that, when property is once dedicated for the use and benefit of the public for park purposes, the city no longer has authority to cancel or set aside such dedication and convey the property for

other purposes. Appellant relies on Dillon on Municipal Corporations, 5th ed., 3d volume, § 1102, and on 20 R. C. L., 645. The section of Dillon on Municipal Corporations relied on by appellant reads as follows:

"A municipal corporation has no implied or incidental authority to alien or dispose of for its own benefit property dedicated to or held by it in trust for the public use, or to extinguish the public uses in such property, nor is such property subject to the payment of the debts of the municipality."

One of the cases cited under this section is *Beebe* v. *Little Rock*, 68 Ark. 39, 56 S. W. 791. In the opinion in that case will be found a history of the ownership of the land in controversy by the city of Little Rock, as well as the manner in which it was held, and it was not held in trust, but it was held, according to the decision of this court, for general purposes. In that case it was said:

"It may be considered as well settled that municipal authorities cannot sell the streets of the town or city dedicated to the public use, and the reason is, in such case the city or town is a mere trustee for the public, and a trustee cannot dispose of the property of the *cestui que trust*, except by special authority. In *Searcy* v. *Yarnell*, 47 Ark. 269, 1 S. W. 319, this court said: 'A municipal corporation has power to dispose of property held for general convenience, pleasure or profit.' The property there involved was the town's interest in a railroad lying mostly without the corporate limits of the town, and constructed for the purpose of connecting the town with the Iron Mountain railroad, three or four miles away, and that for the general convenience, pleasure and profit of the inhabitants of the town. It was in no wise a necessity in or factor of the municipal government." *Beebe* v. *Little Rock*, 68 Ark. 39, 56 S. W. 791.

We think it will be found that the authorities referred to and the cases cited by them are all dealing with property conveyed to the city in trust for a specific purpose.

The next authority cited by appellant is 20 R. C. L. 645. The authority referred to states:

"As a general rule, property dedicated for use as squares, parks or commons, cannot be sold or leased by the municipality, and the Legislature has no power, as against the dedicators, to authorize such disposal. Where the fee is vested in the public, either by condemnation or otherwise, the Legislature may, as against the public and the property owners in the vicinity, control the use, although the use proposed is inconsistent with the one before designated. * * * The general rule is that municipal corporations possess the incidental or implied right to alienate or dispose of their property, real or personal, of a private nature, unless restrained by charter or statute, but they cannot dispose of property of a public nature, such as a public park or common, in violation of the trust in which it is held; and, although a city takes the title to lands condemned for park purposes, it takes it for the public use as a park, and holds it in trust for that purpose. And, while, if it had taken the title free from such trust, it could sell and convey it away, when and as it chose, receiving the title in trust for an especial public use, it cannot convey without the sanction of the Legislature. But there is a distinction between property purchased for a public park or square and not yet dedicated, and property which is purchased for that purpose and actually dedicated to that use." 20 R. C. L. 645, § 13.

All these authorities refer to property conveyed to a city for a specific use and not to property owned by the city generally. Where property has been dedicated by the owner to a public use and where such property has not been used by the public, and neither the public nor any third person has acquired any rights because of the dedication, the dedication may be revoked.

This court has said: "In the recent case of *Davies* v. *Epstein* (77 Ark. 221, 92 S. W. 19), we approved the generally established doctrine that 'an owner of land, by laying out a town upon it, platting it into blocks and lots intersected by streets and alleys, and selling lots by refer-

ence to the plat, dedicates the streets and alleys to the public use, and such dedication is irrevocable.' It is equally well established that 'merely laying out grounds, or merely platting and surveying them, without actually throwing them open to the public use or actually selling lots with reference to the plat, will not, as a general rule, show a dedication. * * * The revocation may be accomplished either by an affirmative act in recalling it, or by an abandonment of the scheme. The question of abandonment is one of fact, and may be said to occur where the object of the use for which the property is dedicated wholly fails. * * * It follows that, the dedication never having been in any way accepted by the public, and having been revoked by abandonment of the scheme for converting the lands into additions to the adjacent town, the title to the streets, avenues and alleys passed to the owners of abutting platted lots and blocks as grantees of the original dedicators." *Dickinson* v. *Arkansas City Improvement Co.*, 77 Ark. 570, 92 S. W. 21, 113 A. S. R. 170.

In the case at bar the city owned the property, and passed an ordinance to the effect that hereafter the river front would be used as a park, and should not be leased or sold. The property, however, was never used as a park; nothing was done by the public or any third persons because of the passage of this ordinance, and, by an affirmative act of the city in passing the ordinance authorizing the sale of the property to the county, it necessarily repealed the first ordinance and revoked the intended dedication.

"Unless private rights have been attached or unless the property has actually been used as a park, the municipality may revoke." Sections 1086 and 1091, Dillon on Municipal Corporations, vol. 3, 5th edition.

We therefore conclude that, in the first place, the property south of the Missouri Pacific railroad tracks is not a part of the river front; and second, that neither third persons nor the public having exercised any rights, and the municipality itself having done nothing but pass the ordinance, it had the right to revoke it. A municipal

corporation may dispose of its property unless it is held in trust in the same manner that a private individual could dispose of his property. This court has said:

"A municipal corporation may be the owner of two classes of property. One class includes all property essential to, or even convenient for, the proper exercise of municipal functions and corporate power. The other class includes all property held for general convenience, pleasure or profit. * * * Municipal corporations possess the incidental or implied right to alienate or dispose of the property, real or personal, of the corporation, of a private nature, unless restrained by charter or statute." *Fussell* v. *Forrest City,* 145 Ark. 375, 224 S. W. 745.

There is no dispute about the city having owned the land in controversy, and it is conceded that, unless the ordinance dedicating the river front for a park prohibits it from doing so, the city may sell the property. There is a pretty full history of this property and the manner in which it was acquired by the city in the *Little Rock* v. *Jeuryens,* 133 Ark. 126, 202 S. W. 45. Among other things the court said: "It follows, from what we have said, that the city owned the disputed land upon which Jeuryens located, unless it was below the high-water mark. If it were below the high-water mark, it was a part of the bed of the river and belonged to the State. * * * We therefore hold that the land was an extension of Water Street, and belonged to the city as such."

And the court further said in the above case: "The decree of the court below will be reversed, and the cause will be remanded with directions to amend the decree quieting the title of the city against both Jeuryns and the State for the property involved in this litigation."

So there can be no dispute about the title being in the city, and, as we have already said, municipal corporations have the same right to sell property held by them for general purpose that an individual has. We have no statute prohibiting it and nothing in the Constitution that prohibits it. And, since the title to the

property involved was in the city and had never been dedicated to public use, the public had never acquired any rights, no third person had ever acquired any rights, and the city had a right to repeal the ordinance with reference to the river front and to sell the property involved in this suit to the county.

The judgment of the court is therefore affirmed.