HAMMON *v.* DIXON.

5-2206                                    338 S. W. 2d 941

Opinion delivered October 10, 1960.

*J. Loyd Shouse, W. S. Walker* and *Eugene W. Moore,* for appellants.

*Virgil D. Willis,* and *Fitton & Adams,* for appellees.

GEORGE ROSE SMITH, J. On August 17, 1951, the city of Harrison conveyed a tract of about three acres, lying within the city and across the street from the county hospital, to Boone Lodge No. 314, Free and Accepted Masons. In 1959 the Lodge announced its intention of constructing

a shopping center upon the land. This proposal aroused at least a limited amount of opposition, especially on the part of certain physicians who felt that the tract was needed for the future expansion of the county hospital. In the course of the controversy the Lodge's right to use the property for commercial purposes was questioned. In order to settle the dispute the appellees, officers of the Lodge, brought this suit on June 16, 1959, to quiet the Lodge's title. The city made no defense, but the county and the doctors, who were joined as representative taxpayers, attacked the city's 1951 deed to the Lodge. This appeal is from a decree upholding the deed and quieting title in the Lodge.

The appellants first contend that the tract in question was dedicated to park purposes by the city council in 1948 and that the restriction is still in force. The facts pertinent to this contention are these:

Back in 1943 the city had purchased a tract of about ten acres which was known as Johnson Park (though it was not used as a park) and included the land now in issue. Five years later the city sold the west half of Johnson Park to Boone county as a site for a county hospital. In preparing to build the hospital the county applied, through the State Board of Health, for a grant of federal funds. The Board of Health, before approving the proposed site, asked the county to obtain from the city a written agreement that the east half of Johnson Park would be maintained as a park and would never be used for business or residential facilities. To this end the city council, on April 21, 1948, adopted a resolution reading in part as follows:

"That the City of Harrison enter into an agreement with Aubrey Hickenbottom, Boone County Judge, wherein for the consideration of the construction of the Boone County Hospital on the west half of Johnson Park, the City of Harrison agrees that the east portion of said park shall be hereafter maintained by the city as a park and shall never be used for the construction of business or residential facilities."

A signed and attested copy of the resolution was filed with the Board of Health, but nothing else was done toward

putting the resolution into effect. The resolution was left in the city recorder's office, unsigned and unpublished. No written agreement between the city and the county, as contemplated by the resolution, appears to have been made. No instrument of any kind, giving notice of the resolution, was placed of record in the county recorder's office. And there is no proof that the Lodge, in buying the property from the city three years later, had any knowledge of the resolution.

Upon these facts the tract was not irrevocably impressed with its asserted character as a public park. By the resolution the city council expressed its intention to execute a contract dedicating the land to park purposes, but the intent was not carried into effect. No notice of the city's proposal was given, either by publication of the resolution, by the recordation of an acknowledged instrument in the county recorder's office, or by actual use of the property as a park.

Regardless of the city council's expectations, the mere passage of the resolution did not create in any one a vested right to demand that the land be devoted forever to public use. Legislative measures are, in the absence of vested rights, subject to repeal by later action of the legislative body. *Files* v. *Fuller,* 44 Ark. 273. It is our opinion that the resolution was effectively abrogated by the 1951 ordinance which authorized a sale of the property to the Masonic Lodge without any restrictions upon the use of the land.

A second contention is that this 1951 ordinance, by which the sale was authorized, was not properly enacted, for the reason that the aldermen's yeas and nays were not recorded. Ark. Stats. 1947, § 19-2403. The minutes of the council meeting recited that seven aldermen, who were named, were present and that one alderman, also named, was absent. In recording the passage of the ordinance in question the minutes recited that all the aldermen present voted in favor of it.

These facts constitute a substantial compliance with the statute. The purpose of recording the votes is ''to

make the members of the council feel the responsibility of their action when important measures are before them, and to compel each member to bear his share in the responsibility, by a record of his action which should not afterwards be open to dispute." *Cutler* v. *Russellville,* 40 Ark. 105. The procedure in this case satisfied the purpose of the statute, by making the position of each alderman a matter of record, and consequently this procedure has uniformly been held to be sufficient. McQuillin, Municipal Corporations (3d Ed.), § 14.04.

We do not reach the merits of the appellants' other two attacks upon the city's sale to the Lodge. It is contended that the purchase price of $1,000 was so grossly inadequate as to indicate fraud and that the sale should be set aside because five of the seven aldermen who voted for the sale were members of the Lodge, though not themselves pecuniarily interested in the transaction. Even if these two charges be conceded to be well founded the sale would at most be voidable, not void. Ordinary principles of limitations and laches operate against the city with respect to a proprietary matter such as the sale of land. *Helena* v. *Hornor,* 58 Ark. 151, 23 S. W. 966; *Jensen* v. *Fordyce Bath House,* 209 Ark. 478, 190 S. W. 2d 977. Any right the city may have had to avoid the sale for inadequacy of price or for conflict of interest is evidently barred by its unexcused inaction for nearly eight years.

Affirmed.