The Honorable Robert Thompson State Senator 414 West Court Paragould, AR 72450-4293
Dear Senator Thompson:
I am writing in response to your request for my opinion on a question arising from the following reported facts:
 Recently, Lawrence County receive[d] a donation of a sizable tract of real property. This transfer to Lawrence County was apparently made without consideration, similar to a charitable gift. The Lawrence County Judge and Quorum Court have received a request from an individual to lease this property, for the purpose of operating a private business on it.
These facts have prompted you to pose the following questions:
 1. Can Lawrence County lease property to a private individual for the purpose of operating a for-profit business?
 2. If so, are bids required before the property is leased?
RESPONSE
Based upon your factual recitation, I assume this donated property is surplus in the sense of not being required for direct public use to maintain the efficient administration of services to the public. I further assume that what you characterize as a transaction similar to a "charitable gift" was not conditioned in a way that would result in a reverter of the property in the event it was used for any *Page 2 
purpose other than direct governmental use. Given these assumptions, I believe the answer to your first question is, in all likelihood, "yes." Having offered this opinion, I must note that the law in this regard is not entirely clear and would benefit from legislative or judicial clarification. Pursuant to the provisions of A.C.A. § 14-16-105 (Supp. 2005), I believe the answer to your second question is "no."
Question 1: Can Lawrence County lease property to a privateindividual for the purpose of operating a for-profit business?
In support of my opinion that the county could in all likelihood enter into such a lease, I must begin with the following passage from the leading case of Pogue v. Cooper, 284 Ark. 105, 107, 679 S.W.2d 207
(1984), which addressed whether a county judge's leasing of county equipment to private interests constituted an illegal exaction in derogation of Ark. Const. art. 16, § 13:
 Amendment 55, 3 gives the county judge, among other powers and duties, custody of county property. Before the adoption of Amendment 55, the county court had custody of county property. Ark. Const. Art. 7, 28; former Ark. Stat. Ann. 22-601 (Repl. 1962); Needham [v. Garner, 233 Ark. 1006, 350 S.W.2d 194 (1961)]. Appellant argues that "custody" of the county property includes the power to lease it and contract for its use on private projects.
 Amendment 55 did not change the law on this subject. We recognize that the County court, prior to the adoption of Amendment 55, had the power to lease real county property to private interests. Chamber of Commerce v. Pulaski County, 113 Ark. 439, 168 S.W. 848 (1914); State v. Baxter, 50 Ark. 447, 8 S.W. 188
(1887).[1] However, the letting of the county's personal property is a qualitatively different matter. Personal property is much more likely to be depleted or destroyed than real property, and thus an illegal exaction is much more likely to occur. *Page 3 
Given that the upshot of the opinion is that a county may not lease public personalty to private interests, a question might arise whether the court's indication that a county may lease its real property to private interests amounts to no more than dictum. However, in my opinion, a reviewing court would almost certainly accord the full weight of law to the court's pronouncements regarding both varieties of public property. The substance of the court's ruling appears to be this: although a county may lease its real property to private parties without offending the illegal exaction provisions of Ark. Const. art. 16, § 13, the same cannot be said of a county's leasing its personalty to private parties because such a lease would entail an unacceptable risk that the depreciation of the personalty would exceed in value any revenues realized from the lease. Compare Ark. Op. Att'y Gen. No. 2006-122
(questioning whether a county could expend public funds on establishing a car racetrack irrespective of its projected profitability).
It would appear, then, that, at least as of the date of the issuance ofPogue, a county judge indeed had the authority to lease county real estate to private interests. Presumably, this authority was bounded at least by the proposition that the county judge cannot act in ways that would undermine the effectiveness of government. Compare A.C.A. §14-14-801(b)(13) (directing the quorum court to "[e]xercise . . . powers, not inconsistent with law, necessary for effective administration of authorized services and functions"). Although the law is not clear on this subject, the county judge's authority to lease property may further have been bounded by a more restrictive principle exemplified in A.C.A. § 14-16-110(c)(1), which authorizes the lease of county property to various nonprofit corporations serving public purposes only upon a showing that the property to be leased "is not, and in the future will not be, needed for use by the county . . ."Compare A.C.A. § 14-16-106 (Supp. 2005) (authorizing the sale at public auction of "any personal or real property owned by a county" only upon a determination by the county judge that the property is "surplus");Fussell v. Forrest City, 145 Ark. 375, 376, 224 S.W. 745 (1920) (concluding that a city could convey a lot that contained an abandoned city hall only after the lot became "unfit for the purposes of government").
To summarize, Pogue clearly established that a county could not lease its personalty to private interests, given that the risk of depreciation exceeding revenues in itself constituted an illegal exaction in derogation of Ark. Const. art. 16, § 13. The court further observed without elaboration that the county could lease its real property to private interests. Left unaddressed in Pogue is whether a county's authority to lease realty is unrestricted or whether the realty must be at *Page 4 
least temporarily unavailable or not useful to serve a public purpose other than income generation. Specifically with respect to your question, then, it might prove significant upon judicial review whether the property at issue could benefit the county in a manner other than generating rental income.
Notwithstanding the possibility that the county might be subject to certain restrictions on its authority to lease its real estate to private interests, it remains the case that counties have regularly entered into transactions with private enterprises, including lease arrangements, in which the only benefit to the public was income. The issue in such cases has frequently been not whether the transaction with private parties was permissible, but rather whether the transaction rendered the property subject to taxation. See, e.g., City of LittleRock v. McIntosh, 319 Ark. 423, 892 S.W.2d 462 (1995) ("Further, we have recently reiterated that even when proceeds received from public property rented for private purposes are used for public purposes, the land is taxable, as the actual use must be public"); Crittenden Hosp.Ass'n. v. Board of Equalization, 330 Ark. 767, 958 S.W.2d 512 (1997) (affirming the denial of a tax exemption for public property being leased by the county to a not-for-profit association); Pulaski Cty. v.Carriage Cr. Improv. Dist., 319 Ark. 12, 888 S.W.2d 652 (1994) (affirming the tax exemption for lots foreclosed by the county when the lots were not being leased to a private party pending the sale for delinquent taxes); B.D.T., Inc. S.E. Inc. v. Moore, 260 Ark. 581,543 S.W.2d 220 (1976) (affirming the taxation of county owned tracts of an airport leased to private companies); Cabbiness v. City of North LittleRock, 228 Ark. 356, 307 S.W.2d 529 (1957) (listing a number of cases recognizing the distinction between governmental and proprietary capacity in municipalities for the purposes of liability); Ark. ValleyCompress Warehouse Co. v. Morgan, 217 Ark. 161, 229 S.W.2d 133 (1950) ("The foregoing case clearly recognizes that a city (i.e., a municipal corporation) acts in two capacities (i.e. a governmental capacity and a proprietary capacity); and that when it enters into contracts involving, not the Government of its citizens, but only the convenience, pleasure, and profit of the people and the City, then the municipal corporation acts in its proprietary capacity"); Lester v. Walker, 177 Ark. 1097,9 S.W.2d 323 (1928) ("A municipal corporation may be the owner of two classes of property. One class includes all property essential to, or even convenient for, the proper exercise of municipal functions and corporate power. The other class includes all property held for general convenience, pleasure or profit"); Fussell v. Forrest City,145 Ark. 375, 224 S.W. 745 (1920) ("A municipal corporation may be the owner of two classes of property. One class includes all property essential to, or even convenient for, the proper exercise of municipal functions and corporate power. *Page 5 
The other class includes all property held for general convenience, pleasure or profit."); and Robinson v. Indiana Ark. Lbr. Mfg.Co., 128 Ark. 550, 194 S.W. 870 (1917) ("There is a material difference between the use of property exclusively for public purposes and renting it out and then applying the proceeds arising therefrom to the public use. [To be taxable,] [t]he property under our Constitution must be actually occupied or made use of for a public purpose and our court has recognized the difference between the actual use of the property and the use of the income"). There is significant precedent, then, for a political subdivision's leasing out its surplus property to a private entity for the sole purpose of realizing a profit.
It is not entirely clear from the passage recited from Pogue whether a county's authority to lease its real property to private interests arises from the Arkansas Constitution or from the legislature in the exercise of its power to enact any laws not in conflict with the U.S. and Arkansas Constitutions or preemptive federal law. Although the court in Pogue discussed the interplay between Ark. Const. art. 7, § 28 and Ark. Const. amend. 55 regarding the "custody" of county property, the court at no point declared that the county judge's right to lease county real estate to private interests stemmed from his constitutionally mandated "custody" of county property. In this regard, I will note that the two cases recited by the court in support of a county's right to lease real estate to private entities both turned on an analysis of the statutes then in effect. If a county judge's authority to lease property to private interests arises only by statute — at the present time, presumably pursuant to A.C.A. §§ 14-14-1101 and-1102, which set forth the county judge's powers with respect to property — the question would be whether current law differs from that in effect in 1984, whenPogue was issued.
For purposes of the present inquiry, it should not matter whether the county judge's authority to enter into leases with private parties is of constitutional or merely statutory origin. Both Amendment 55 and A.C.A. §§ 14-14-1101 and-1102, which set forth the powers of the county judge, are in all material respects identical to the law in effect at the time the court issued its opinion in Pogue. It follows that a county judge today enjoys the same authority to lease county property to private interests as he did in 1984. In my opinion, then, Lawrence County may indeed enter into a lease with a private party, although it is not entirely clear whether it may do so whenever the property is "surplus" in the sense of not being required for immediate governmental use, or whether it may do so only if no exclusively governmental alternative use exists. The law would benefit from clarification in this regard. Under the circumstances, I can do no more than *Page 6 
opine that the proposed transaction would be less susceptible to challenge than it otherwise might be if the county judge reasonably concluded that the county had had no immediate alternative use for the property and if the term of the lease were limited in the event the county judge anticipated a future public use.
Having ventured this opinion, I must further note that the Arkansas Code contains a number of statutes expressly authorizing counties to lease property to various entities. Under certain circumstances, for instance, a county is authorized to lease a county hospital to a municipality, A.C.A. § 14-16-108 (Repl. 1998),[2] to lease county lands to a municipality, A.C.A. § 14-16-109 (Repl. 1998), and, generally, to lease real or personal property belonging to the county to "any lawfully incorporated nonprofit, nonsectarian educational institution; any lawfully incorporated nonprofit, nonsectarian boys' club or girls' club; or any lawfully incorporated quasi-public, nonprofit, nonsectarian organizations including, but not limited to, community mental health centers," provided that the county court has been presented with a petition or other evidence establishing that the property is not and will not in the future be needed for use by the county. A.C.A. §14-16-110 (Repl. 1998). The latter statute also sets forth the procedure, including notice and a hearing, that must be followed in order to effectuate such a lease.
The existence of these statutes raises the question of whether the legislature intended them to be exclusive, thereby foreclosing any lease of county-owned real property to any entity other than those referenced in the statutes referenced in the preceding paragraph. Adopting such an interpretation might be deemed consistent with the principle of statutory interpretation denominated "expressio unius est exclusioalterius" ("the expression of one thing is the exclusion of another"). However, as the court noted in State v. Martin, 60 Ark. 343, 355,30 S.W. 421 (1895): "[O]nly those things expressed in such positive affirmative terms as plainly imply the negative of what is not mentioned" will foreclose what would otherwise be authorized action.
In my opinion, the principle of expression unius does not apply in the present case to foreclose a county from leasing its property to for-profit enterprises. I base this conclusion not only upon the fact that counties have long leased such property to *Page 7 
private, for-profit entities without any apparent challenge except regarding the county's potential tax liability, see discussionsupra, but also upon the fact that the supreme court in Pogue, at a time when the Code contained all of the above referenced statutes expressly authorizing counties to lease their properties, nevertheless pronounced without equivocation that a county could lease its real property to private interests. By necessary implication, then, the supreme court did not consider the statutes in question preclusive of other lease arrangements. I am further reinforced in this conclusion by the provisions of A.C.A. § 14-16-105 (Supp. 2005), which in subsection (e) sets forth the procedure for bidding when the appraised value of county property to be sold or conveyed exceeds $1,000. Until the enactment of Acts 2005, No. 1240, § 1, this statute made no direct reference to leases, instead referring only generally upon "the sale or conveyance of county property."[3] However, pursuant to Act 2005, A.C.A. §14-16-105(f)(2)(D) now creates the following exemption from the bidding requirements set forth in the other subsections of A.C.A. § 14-16-105:
 When the county is leasing county property, including, but not limited to, leasing county lands or property under § 14-16-108, § 14-16-109, § 14-16-110, or the Municipalities and Counties Industrial Development Review Bond Law, § 14-164-201 et seq.
(Emphasis added.) I believe the highlighted language in this statute compels the conclusion that the county has leasing authority beyond that granted in A.C.A. § 14-16-108 through-110. The principle ofexpressio unius consequently could not apply to those referenced statutes.
Question 2: If so, are bids required before the property isleased?
In my opinion, A.C.A. § 14-1-6-104(f)(2)(D), which is recited immediately above, creates a blanket exemption from any bidding requirement when the county leases property. Specifically, the opening clause, "[w]hen the county is leasing property," is global in its scope, relieving the county of any obligation to solicit bids when it is leasing property. *Page 8 
In my opinion, a court would uphold any lease rate that did not reflect fraud on the part of county officials negotiating the transaction. As the court noted in Arkansas Valley Compress, supra at 174:
[I]n 12 C.J.S. 970 this appears:
 "In the absence of fraud or other inequitable factors a court of equity will not rescind a contract for inadequacy of consideration, improvidence, or hardship."
 Some of the cases in which this Court has refused to allow a municipality or a county to rescind a contract on the claim of inadequacy of consideration are: Little Rock Chamber of Commerce v. Pulaski Co., 113 Ark. 439, 168 S.W. 848, and Washington Co. v. Lynn Shelton Post, 201 Ark. 301, 144 S.W.2d 20.
 So in the case at bar, what is said to be an improvident contract in the light of present rental values, must nevertheless stand as a valid contract, else there would never be any sanctity to contracts made by a municipality when acting in a proprietary capacity.
In the referenced Washington County v. Lynn Shelton Post #27, AmericanLegion, 201 Ark. 301, 306, 144 S.W.2d 20 (1940), the court observed:
 Where the county court [now "judge"] is by statute clothed with the power to sell and dispose of county property not dedicated to specific use, it may determine what consideration shall be accepted, and unless there is fraud, the judgment of the county court will not be disturbed.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Notwithstanding the court's characterization of these cases, onlyBaxter involved a lease to private parties. Chamber of Commerce involved the application of statutory and common law to the sale of county property to private interests.
[2] Among the conditions for such a lease is the provision that the municipality continue to operate the property either as a hospital or as a nursing home. Counties are also generally authorized to "acquire, own, construct, reconstruct, extend, equip, improve, maintain, operate, sell, lease, contract concerning, or otherwise deal in or dispose of any land, building, improvements, or facilities of any and every nature whatever that can be used for hospitals, nursing homes, rest homes, or related facilities. . . ." A.C.A. § 14-265-103. This provision does not appear to apply to the cicrcumstances giving rise to your question.
[3] The quoted language remains in current A.C.A. § 14-16-105(f)(2). The fact that the term "conveyance" might be read more broadly than the term "sale" is reflected in the current statute, which refers to "conveying an easement," A.C.A. § 14-16-105(f)(2)(C) — a usage of the term that suggests that the statute may always have applied to leases of county property. Indeed, one of my predecessors drew precisely that conclusion in Opinion No. 88-369.