ARKANSAS OKLAHOMA GAS CORPORATION *v.*
MacSTEEL DIVISION of QUANEX, Sebastian County,
David Hudson, County Judge

07-148                                                    262 S.W.3d 147

Supreme Court of Arkansas
Opinion delivered September 13, 2007

[Rehearing denied October 25, 2007.*]

---

* BROWN, J., not participating.

*Daily & Woods, PLLC,* by: *Jerry L. Canfield,* for appellant.

*Gill Elrod Ragon Owen & Sherman, P.A.,* by: *Stephen K. Cuffman; Daniel Shue,* Chief Deputy Prosecuting Attorney, 12th Judicial Dist., for appellees.

JIM HANNAH, Chief Justice. Arkansas Oklahoma Gas Corporation, (AOG), appeals the order of summary judgment entered in favor of MacSteel, a Division of Quanex Corporation; Sebastian County; the Sebastian County Court; David Hudson, in his official capacity as County Judge; and Shawn Looper, Jake Patterson, Ray Stewart, Tom Craft, Lisa Sellers, James D. Perry, Pierce Farris, Leo Faulkner, Bob Schwartz and Donald E. Carter, in their official capacities as members of the Sebastian County Quorum Court (collectively referred to as MacSteel). AOG alleges that the circuit court erred in finding that Sebastian County properly entered into a lease and granted an easement in land that had been conveyed to the County by the National Park Service subject to use of the land for public park or public recreation purposes.

This court previously affirmed a decision of the Sebastian County Circuit Court voiding an easement (the first easement) granted in the property for failure to comply with the appraisal, notice, and bidding procedures set out in Ark. Code Ann. § 14-16-105 (Supp. 2003). *MacSteel v. Arkansas Oklahoma Gas Corp.,* 363 Ark. 22, 210 S.W.3d 878 (2005). At issue now is a lease granted under the same terms as the first easement while Ark. Code Ann. § 14-16-105 (Supp. 2003) was still in force and a second easement granted after section 14-16-105 was amended by Act 1240 of 2005. Ark. Code Ann. § 14-16-105 (Supp. 2005). The lease conveys the same rights as the first easement, and even though it is described as a lease, it is void for the same reasons as the first easement. *See MacSteel, supra;* Ark. Code Ann. § 14-16-105 (Supp. 2003). The second easement is valid, as it was obtained after Act 1240 of 2005 became law and amended section 14-16-105 to exclude an easement from the appraisal, notice, and bidding procedures of section 14-16-105. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(1), (7).

*Facts*

MacSteel uses significant quantities of natural gas in its manufacture of steel and in 2003 was obtaining its natural gas from

AOG. MacSteel desired to reduce its costs by acquiring its natural gas via interstate natural gas suppliers. It contracted with Parnell Consultants, which obtained an easement from Sebastian County to install a pipeline across county land acquired from the United States government when Fort Chaffee closed. The property was deeded subject to use of the land for public park and public recreation purposes and subject to existing easements. The pipeline was to be placed within an easement existing at the time the land was transferred to the County and which was already used at that time for overhead power transmission. Under the lease and second easement, the County retains the right to use and enjoy the surface of the easement area.

### The Lease

■ In *MacSteel I*, we rejected MacSteel's argument that § 14-16-105 is intended to apply only to fee simple sales of real property and does not apply to leases. We held that the grant of the first easement had to comply with the appraisal, notice, and bidding procedures set out in Ark. Code Ann. § 14-16-105 (Supp. 2003). It did not and was void. The lease in the instant case grants the same rights in the property as the first easement, and it was executed while Ark. Code Ann. § 14-16-105 (Supp. 2003) was still in force. Simply renaming an easement a lease does not alter the rights granted. Just as the first easement had to comply with the terms of section 14-16-105 in force in 2003, so did the lease. It is void for the same reasons.

### Authority to Grant the Second Easement

We are cited to *Fussell v. Forrest City*, 145 Ark. 375, 224 S.W. 745 (1920), and other cases[1] for the proposition that the County lacked the authority to grant the second easement. As set out in the cited cases, the common law rule is that a municipality is a mere trustee for the public in land dedicated to the benefit of the people of the state and may not sell an interest in the land without legislative authority. *Fussell, supra; see also* 56 Am. Jur. 2d *Municipal Corporations* § 507 (2000).

We are thus asked to determine whether there is statutory authority for the County to grant the second easement:

---

[1] *Lester v. Walker*, 177 Ark. 1097, 9 S.W.2d 323 (1928); *Beebe v. City of Little Rock*, 68 Ark. 39, 56 S.W. 791 (1900).

We review issues of statutory construction de novo, as it is for this court to decide what a statute means. *Hodges v. Huckabee*, 338 Ark. 454, 995 S.W.2d 341 (1999). In this respect, we are not bound by the decision of the trial court; however, in the absence of a showing that the trial court erred in its interpretation of the law, that interpretation will be accepted as correct on appeal. *Ghegan & Ghegan, Inc. v. Barclay*, 345 Ark. 514, 49 S.W.3d 652 (2001). The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary meaning and usually accepted meaning in common language. *Weiss v. McFadden*, 353 Ark. 868, 120 S.W.3d 545 (2003). We construe the statute so that no word is left void, superfluous, or insignificant; and meaning and effect are given to every word in the statute if possible. *Ozark Gas Pipeline Corp. v. Arkansas Pub. Serv. Comm'n*, 342 Ark. 591, 29 S.W.3d 730 (2000). When the language of the statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Weiss v. McFadden, supra.* When the meaning is not clear, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. *Id.*

*MacSteel*, 363 Ark. at 29–30, 210 S.W.3d at 882–83. The circuit court found that the easement was granted to facilitate industrial development. Statutory authority for this is found in Ark. Code Ann. § 14–164–205 (Repl. 1998):

Any municipality or any county is authorized to own, acquire, construct, reconstruct, extend, equip, improve, operate, maintain, sell, lease, or contract concerning, or otherwise deal in or dispose of, any land, buildings, or facilities of any and every nature whatever that can be used in securing or developing industry within or near the municipality or county.

This statute grants a municipality authority to dispose of "any land" if it is to secure or develop industry. This is a broad grant of authority and if the General Assembly had intended to exclude land dedicated as public parks, it could have done so. It did not. Further, the restrictions placed on conveyance of land under section 14–16–105, as amended by Act 1240 of 2005 provides that "[t]he procedures for sale and conveyance of county property set forth in this section shall not apply . . . [w]hen the county is conveying an easement, including but not

limited to . . . gas lines." Ark. Code Ann. § 14-16-105(2)(C) (Supp. 2005). This would seem to resolve the issue in MacSteel's favor.

However, AOG cites us to *Washington County v. Shelton*, 201 Ark. 301, 144 S.W.2d 20 (1940), and *Little Rock Chamber of Commerce v. Pulaski County*, 113 Ark. 439, 168 S.W. 848 (1914), for the proposition that a general authorization to alienate an interest in real property does not reach property held in trust for a specific purpose. These two cases refer to a statute no longer in force and do not discuss whether real property held in trust for a specific purpose can be alienated. Rather, they discuss whether sufficient consideration supported the sale of county property in each case. There is no merit to AOG's claim that the holdings in *Little Rock*, *supra*, and *Washington County*, *supra*, preclude the grant of the easement because the property was held in trust for the specific purpose of public recreation.

■ In construing section 14-164-205, just as it reads, giving the words their ordinary meaning and usually accepted meaning in common language, the statute is plain, unambiguous, and provides that any municipality or county may contract or alienate any land or facilities of any and every nature whatever in securing or developing industry. Certainly the grant of the second easement by Sebastian County to allow MacSteel to obtain gas for its industrial operations is permitted under the plain meaning of this statute.

*Article 12, § 5 of the Arkansas Constitution*

■ AOG argues that the County's action in granting the easement was "no different than if the quorum court had appropriated money out of the County's general fund to MacSteel, or any other employer in Sebastian County." AOG does not argue that the County appropriated money or loaned its credit to MacSteel; however, it argues that art. 12, § 5 of the Arkansas Constitution was violated. This section prohibits political subdivisions from becoming stockholders or lending credit:

> No county, city, town or other municipal corporation shall become a stockholder in any company, association or corporation; or obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual.

AOG offers no evidence that the County has become a stockholder in MacSteel. Nor has AOG offered any evidence that the County has

appropriated money, or loaned its credit to MacSteel. There is no merit to the argument offered that art. 12, § 5 of the Constitution was violated.

### Inadequate Consideration

■ AOG next argues that given MacSteel will realize potentially millions of dollars in savings by use of the pipeline, and that the $44,796 accepted in consideration[2] for granting the easement was so grossly inadequate as to constitute fraud. AOG cites to *Hammon v. Dixon*, 232 Ark. 537, 338 S.W.2d 941 (1960), for the proposition that the County may not convey the interest for inadequate consideration. *Hammon* casts no light on the issue argued by AOG. The court in *Hammon* stated as follows:

> We do not reach the merits of the appellants' other two attacks upon the city's sale to the Lodge. It is contended that the purchase price of $1,000 was so grossly inadequate as to indicate fraud and that the sale should be set aside because five of the seven aldermen who voted for the sale were members of the Lodge, though not themselves pecuniarily interested in the transaction. . . .

*Hammon*, 232 Ark. at 540, 338 S.W.2d at 944. Next we are cited to *Gordon v. Woodruff County*, 217 Ark. 653, 232 S.W.2d 832 (1950), for the proposition that excepting non-monetary consideration, a cash payment of $1 for the real property, was so palpably inadequate as to amount to fraud. As AOG notes, the court in *Gordon* was discussing *Little Rock, supra*; however, the court in that case stated that if a county has the power to take the public advantage of the sale of county property into consideration at all, it has the right to base the convey-ance entirely upon that as consideration. *Little Rock, supra*. Under section 14-164-205, the County has the authority to convey property for purposes of industrial development. AOG offers no convincing

---

[2] The allegation that MacSteel paid $44,796 for property worth as much as $2.1 million to MacSteel is not an accurate statement of the facts in this case. The amount of money that AOG asserts MacSteel will save by use of the easement is not a measure of its value. Fair market value is "the amount of money which a purchaser who is willing but not obligated to buy the property would pay to an owner who is willing but not obligated to sell it, taking into consideration all uses to which the land is adapted and might in reason be applied." *Arkansas State Highway Comm'n v. DeLaughter*, 250 Ark. 990, 1001, 468 S.W.2d 242, 247 (1971).

argument that there was a lack of consideration. This court does not consider arguments unsupported by convincing argument. *Ganey v. Kawasaki Motors Corp.*, 366 Ark. 238, 234 S.W.3d 838 (2006).

## FOIA

AOG alleges that in the second easement, County Judge Hudson entered into private meetings with the quorum court members designed to assure the outcome in the public meeting. It also alleges that MacSteel met with quorum court members intending to sway the quorum court members and in so doing enabled the County to avoid the public hearing and public consideration of the matters. AOG argues that MacSteel indirectly caused the County to violate the FOIA. The evidence AOG offered was that Hudson contacted quorum court members to ask if they had any questions about the agenda items and that MacSteel met with quorum members to lobby for its interests.

The FOIA is to be liberally interpreted to accomplish its purpose of free access to public information. *Harris v. City of Fort Smith*, 359 Ark. 355, 197 S.W.3d 461 (2004). One goal is to assure that public business be performed in an open and public manner. *Id.* In *Harris,* the board members were contacted by Deputy City Administrator Ray Gosack who polled them one by one to obtain their individual approval of a bid to be submitted for the purchase of real property. This court held that polling the board members to obtain their approval on the bid constituted a meeting subject to the FOIA. This court in *Harris* relied on cases cited by AOG, including *Rehab Hospital Services Corp. v. Delta-Hills Health Systems Agency, Inc.*, 285 Ark. 397, 687 S.W.2d 840 (1985) (telephone poll of the Executive Committee violated the FOIA where there was no emergency), and *El Dorado v. El Dorado Broadcasting Co.*, 260 Ark. 821, 544 S.W.2d 206 (1976) (FOIA applied to informal meeting of mayor and four of eight aldermen). In the present case, Hudson did not poll the quorum court members to obtain a pre-public meeting approval of board action but rather asked if they understood the agenda. There is no merit to AOG's claim that Hudson contacted the quorum court members to assure the outcome in the later public meeting. Further, AOG offers no evidence that in contacting quorum court members, MacSteel acted in any capacity other than its own.

## Constitutionality of Act 1240 of 2005

■ AOG argues that Act 1240 of 2005 is unconstitutional because it violates art. 12, § 5 and art. 16, § 13 of the Arkansas Constitution. AOG is arguing the Arkansas Constitution prohibits the financing of a private business by the County. We are cited to *Halbert v. Helena-West Helena Industrial Development Corp.*, 226 Ark. 625-26, 291 S.W.2d 802 (1956) (purchase of membership in local industrial development council prohibited under art. 12, § 5 and amend. 13)[3] and *Adams v. Bryant*, 236 Ark. 859, 864-65, 370 S.W.2d 432 (1963) (municipal utility was agency of the city and prohibited by art. 12, § 5 from purchasing stock in Johnson County Frozen Foods, Inc.). We have already rejected the argument that art. 12, § 5 of the Arkansas Constitution was violated. Further, there is no evidence offered of any misapplication of public funds in violation of art. 16, § 13. There is no merit to this issue.

## Civil Rights

■ AOG alleges that it was deprived of its rights to equal protection and due process when it was not allowed to bid and try to obtain the easement. We are cited to *L&H Sanitation, Inc. v. Lake City Sanitation, Inc.*, 769 F.2d 517 (8th Cir. 1984), a case where L&H bid on a solid waste contract along with Lake City. The City of Heber Springs initially decided not to award the contract and later ignored the bids and awarded the contract to Lake City. Where L&H had submitted a bid in open bidding that it argued was the lowest bid, it had a legitimate expectation of being awarded the contract under competitive bidding. In *L&H*, we held it was error to dismiss the civil rights claim. *L&H, supra*. AOG offers no evidence that bidding was undertaken in this case. *L&H* is not on point. Similarly, we are also cited to *Bennett Ford v. Pulaski County Special School District*, 274 Ark. 208, 624 S.W.2d 426 (1981), a case where the school district advertised for bids on providing school buses and Bennett alleged that it was the lowest qualified bidder. As in *L&H*, the unsuccessful bidder has standing. Again, no bidding was undertaken in this case, and *Bennett, supra*, is not on point. We do not consider arguments that are unsupported by convincing argument. *Ganey, supra*.

Affirmed.

---

[3] Repealed by Ark. Const. amend. 62.