David HARRIS *v.* CITY of FORT SMITH, Arkansas

04-485                                          197 S.W.3d 461

Supreme Court of Arkansas
Opinion delivered November 4, 2004

Hodson, Woods & Snively, LLP, by: Michael Hodson, for appellant.

Friday, Eldredge & Clark, by: R. Christopher Lawson, for appellees.

Quattlebaum, Grooms, Tull & Burrow, by: John E. Tull, III and E. B. Chiles, IV, amicus curiae.

JIM HANNAH, Justice. David Harris appeals a decision of the Sebastian County Circuit Court granting the City of Fort Smith's motion for summary judgment. Harris asserts that the circuit court erred in finding that one-on-one discussions conducted by telephone or in person between the City Administrator Bill Harding and individual members of the City Board of Directors did not constitute Board action that falls under the Arkansas Freedom of Information Act (FOIA).[1] By contacting individual Board members, Harding obtained the approval of the entire Board to submit a bid in an auction to purchase real property. The circuit court found that under Arkansas law, the FOIA does not apply "to a chance meeting or even a planned meeting of any two members of the city council." The circuit court also noted that although the Board approved submission of the bid, the purchase could not be and was not finalized until it was publicly discussed and approved. We hold that under the facts of this case, contact of individual Board members by the City Administrator to obtain approval of action to be taken by the Board as a whole constituted an informal Board meeting subject to the FOIA.

This case was appealed to the court of appeals, which reversed the circuit court. Harris v. City of Fort Smith, 86 Ark.App. 20, 158 S.W.3d 733 (2004). A petition for review was granted by this court, and our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(e).

*Facts*

Deputy City Administrator Ray Gosack learned that Bank One was going to sell at auction property formerly owned by the Fort Biscuit Company. Because Gosack believed that the Fort Biscuit property could be used for street construction to alleviate noise and congestion in downtown Fort Smith, he told Harding

---

[1] Ark. Code Ann. §§ 25-19-10—25-19-109 (Repl. 2002).

about the auction. A memorandum from Gosack to Harding noted the possibility of using part of the Fort Biscuit property to improve a downtown truck route. The memorandum also stated, "Acquiring this property through an auction creates unusual challenges for the city." Gosack then explained in his memorandum that normal procedure in seeking Board approval prior to acquisition meant that the information regarding the maximum bid the City could offer would be public information, making competitive bidding impossible.

The Fort Biscuit property was divided into tracts for purposes of the auction and was to be bid in two ways. Bids were to be taken on individual property tracts, and bids were to be taken on the property as a whole. If the bids on individual tracts added up to an amount higher than the highest bid on the entire property, the property would be sold by tracts.

Harding contacted each Board member either in person or by phone to gain approval to bid, as well as to gain approval of bid amounts. The Board approval required that the bids not exceed fifteen percent above the appraised value of the property. The City then had the property appraised. The City was successful in the April 18, 2003, auction in obtaining the tracts needed for the proposed road construction. The tracts were acquired at approximately two-thirds of the appraised value. On April 23, 2003, a "Special Meeting & Study Session" of the Board was held, and a resolution was passed approving the purchase.

Harris attended the "Special Meeting & Study Session" when the purchase of the land was approved. He then filed suit alleging that the one-on-one meetings between Harding and the Board members violated the FOIA. The circuit court found that the one-on-one meetings did not constitute a meeting subject to the FOIA, and further, that although the Board approved submission of the bid, the purchase was later publicly discussed before it was approved. The court of appeals reversed the circuit court holding that the serial conversations between Harding and the individual Board members about a matter involving a bid on the purchase of land constituted a "meeting" under the FOIA. The court of appeals remanded the case to the circuit court to enter an order that the FOIA was violated, to enter an injunction, and to award attorney's fees.

Both parties relied upon stipulated facts in their respective motions for summary judgment. According to the stipulation, Harding contacted Board members to determine "whether the

Board would approve the purchase of the land at a subsequent meeting if Mr. Harding made a successful bid at the public auction." The parties also stipulated that the contact with Board members involved city business, that no notice was given to the public of these one-on-one meetings, and that the one-on-one meetings were held to avoid publicly disclosing the amount of the City's bids.

## Standard of Review

When we grant a petition for review, we consider the matter as if the appeal had been originally filed in this court. *Neill v. Nationwide Mut. Fire Ins., Co.*, 355 Ark. 474, 127 S.W.3d 484 (2003); *BPS, Inc. v. Parker,* 345 Ark. 381, 47 S.W.3d 858 (2001). A trial court may grant summary judgment only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Craighead Elec. Coop. Corp. v. Craighead County,* 352 Ark. 76, 98 S.W.3d 414 (2003); *Cole v. Laws,* 349 Ark. 177, 76 S.W.3d 878 (2002). Once the moving party has established a prima facie case showing entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Craighead Elec., supra; Adams v. Arthur,* 333 Ark. 53, 969 S.W.2d 598 (1998).

## The FOIA

The FOIA is to be liberally interpreted to accomplish the purpose of promoting free access to public information. *Johninson v. Stodola,* 316 Ark. 423, 872 S.W.2d 374 (1994). Further, the FOIA is also to be liberally interpreted most favorably to the public interest of having public business performed in an open and public manner. *Laman v. McCord,* 245 Ark. 401, 404-05, 432 S.W.2d 753 (1968). "Statutes enacted for the public benefit should be interpreted most favorably to the public." *Ark. Gazette Co. v. Pickens,* 258 Ark. 69, 78, 522 S.W.2d 350, 355 (1975) (quoting *Broward County v. Doran,* 224 So.2d 693, 699 (Fla. 1969)).

■     Arkansas Code Annotated Section 25-19-106(a)(Repl. 2002) provides in pertinent part that "all meetings, formal or informal, special or regular, of the governing bodies of all municipalities . . . shall be public meetings." The term "public meetings" is defined in the FOIA:

> "Public meetings" means the meetings of any bureau, commission, or agency of the state, or any political subdivision of the state, including municipalities and counties, boards of education, and all other boards, bureaus, commissions, or organizations in the State of Arkansas, except grand juries, supported wholly or in part by public funds or expending public funds. . . .

Ark Code Ann. § 25-19-103(4) (Repl. 2002). The issue before this court is whether the one-on-one meetings between Harding and the individual Board members, by which the Board approved bidding on the property, as well as bid amounts, constituted a Board meeting subject to the FOIA. An April 5, 2002, memo from Gosack to Harding discussed the unique challenges the Board faced in acquiring the property:

> Acquisition of the Fort Biscuit property would be somewhat unusual. The property will be sold at an auction. We understand the bankruptcy trustee will take bids on each tract individually and on all tracts. The trustee will then determine which option produces the greatest amount of proceeds.
>
> Acquiring this property through an auction creates some unusual challenges for the city.
>
> • Normally, we seek formal board approval, including an offer price, before acquiring property. If we obtain formal board approval for acquisition of the Fort Biscuit property, the city won't be able to <u>competitively bid</u> for the property since our maximum offer would be public information.
>
> • If the city bids, we'll also need to be prepared to bid for the purchase of all _____ tracts. The tracts not needed for the truck route project could be sold or used for another public purpose.
>
> • If the city was the successful bidder on the project, the board would need to be prepared to publicly approve the acquisition shortly after the auction date. Backing out of the bid after the auction would be very difficult and unfair to the seller.

Our purpose now is to gauge the board's interest in pursuing acquisition of the Fort Biscuit property for realignment of the truck route. Given the number of tracts involved, the board might find it useful to visit the site.

If the board is interested, we'll need to have some appraisal work performed to determine how much the city should offer for the property. We would then informally review a maximum offer amount with the board. We'd want to have the board's concurrence on a maximum offer amount before participating in the auction.

The parties stipulated that the one-on-one meetings were held to conduct Board business. According to the Affidavit of Bill Harding attached as an exhibit to the City's motion for summary judgment:

I asked each Board member if he or she was comfortable with me bidding within this range on the property. Each Board member responded positively. I had each of these conversations with the understanding that any approval for the purchase of the property could not take place until the Board formally convened for a meeting and voted to approve the purchase.

An April 16, 2002, memo from Harding to the mayor and the Board confirmed the decision of the Board:

This Thursday morning, April 18th, the Fort Biscuit property will be auctioned off to the highest bidders. The real estate portion of the auction is due to start at 11:00 am. We were able to speak to each of you over the last several days and the unanimous response was to go forward with an attempt to purchase the property as a means to alleviate some of the major problems associated with the existing truck route.

Since receiving the "go-ahead" from you we retained Calvin Moye to provide us an opinion as to the value of the real estate to be auctioned. Those values are reflected in the attachment in Tables 1 through 3.

* * *

As such we are asking for authority to bid up to the amount reflected in Appraisal + 15% column, (tracts 3,4,5 and 6), in Table

3 of the attachment. As you can see the maximum exposure to the city is $1,099,688 or $1.1 million.

After you have had an opportunity to review the information I will be in contact with you to determine your position on our recommendation.

Both parties rely primarily on *Rehab Hospital Services Corp. v. Delta-Hills Health Systems Agency Inc.*, 285 Ark. 397, 687 S.W.2d 840 (1985), and *El Dorado Mayor v. El Dorado Broad., Co.*, 260 Ark. 821, 544 S.W.2d 206 (1976). In *Rehab Hospital,* the plaintiff sought to void a decision of the Executive Committee of Delta Hills, the regional health planning agency, to file a motion for reconsideration of the decision of the Arkansas State Planning Agency to grant a certificate of need to construct a hospital in Jonesboro. This court stated that a telephone poll of the Executive Committee violated the FOIA where there was no emergency and no emergency notice to the press. However, this court also stated that "the most significant issue in this case is what remedies, if any, are appropriate. . . ." *Rehab Hospital,* 285 Ark. at 400, 687 S.W.2d at 842. The plaintiff in *Rehab Hospital* sought "to use the Freedom of Information Act solely to mandate the result of the meeting." *Id.* This court held "that some actions taken in violation of the requirements of the act may be voidable. It will be necessary for us to develop this law on invalidation on a case-by-case basis." *Rehab Hospital,* 285 Ark. at 401, 687 S.W.2d at 843.

In *El Dorado, supra,* the issue was whether a meeting between the mayor and four of the city's eight aldermen constituted a meeting subject to the FOIA. This court stated:

The Freedom of Information Act applies alike to formal and informal meetings and since we are required to give the Act a liberal interpretation, we cannot agree with appellants that it applies only to meetings of officially designated committees. We can think of no reason for the Act specifying its applicability to informal meetings of governmental bodies unless it was intended to cover informal but unofficial group meetings for the discussion of governmental business as distinguished from those contacts by the individual members that occur in the daily lives of every public official. Any other construction would obliterate the word "informal" as applied to meetings and make it simpler to evade the Act than to comply with it.

*El Dorado,* 260 Ark. at 823-24, 544 S.W.2d at 207. The court further stated:

Furthermore, we do not interpret the trial court's judgment as applying the Freedom of Information Act to a chance meeting or even a planned meeting of any two members of the city council. By its very terms the trial court's order applies only to those group meetings such as the facts here showed — *i.e.* any group meeting called by the mayor or any member of the city council at which members of the city council, less in number than a quorum meet for the purpose of discussing or taking any action on any matter on which foreseeable action will be taken by the city council.

*El Dorado*, 260 Ark. at 824, 544 S.W.2d at 208.

### Meeting under the FOIA

The issue in the present case is whether the one-on-one meetings constitute an informal meeting of the Board subject to the FOIA. In *Arkansas Gazette, supra*, a committee made up of University of Arkansas board members met with the University President and others to discuss allowing possession of alcohol in campus housing. The meeting was closed to the public, and the press was asked to leave. The committee then met and later conveyed information to the board that was used by the board to make a decision. This court in *Pickens* stated:

Of course, pertinent to our discussion in the instant litigation is the question, "Did the decision reached by the committee affect proposed rules for the student body?" To ask the question is but to answer it, for the committee made its recommendations to the board on the basis of its own investigation, and the board adopted that recommendation with but little discussion. When a committee of a board meets for the transaction of business — this is a public meeting, and subject to the provisions of the Freedom of Information Act.

*Pickens*, 258 Ark. at 76-7, 522 S.W.2d at 354.

Harris argues that by polling the entire Board, an informal meeting of the Board was held. On that basis, Harris argues there is no need to consider whether the FOIA applies to a meeting of two board members. Harris argues that in the end what is involved is a knowing deception of the public to accomplish the purchase. He also argues that even though the public was able to attend the April 23, 2003, meeting, the minds of the Board members were already made up, and refusing to approve the purchase would have been difficult.

■ Under the particular facts of the matter before us, we conclude that an informal meeting subject to the FOIA was held by way of the one-on-one meetings. The purpose of the one-on-one meetings was to obtain a decision of the Board as a whole on the purchase of the Fort Biscuit property. Counsel for the City at oral argument acknowledged that the issue in this case did not involve a meeting of two as discussed in *El Dorado, supra,* but rather involved conversations that took place with all seven Board members. The facts of this case are more analogous to *Rehab Hospital, supra,* where this court found that polling the Executive Committee to determine the Committee's decision was a meeting that was subject to the FOIA.

■ ■ The use of Harding as an intermediary between the Board members did not alter the actual character of the result of Harding's work, which was a decision of the Board. The FOIA may not be circumvented by delegation of duties to others. *See, e.g., City of Fayetteville v. Edmark,* 304 Ark. 179, 801 S.W.2d 275 (1990). We note that the Board in this case had a laudable purpose in acquiring the Fort Biscuit property by confidential bid. The property was acquired for improving traffic conditions in the downtown area, and was acquired at a price that was favorable to the taxpayers. However, the FOIA as presently drafted will not permit approval of a confidential bid by the method used by the Board in this case. Whatever process might be needed to obtain public entity approval of the submission of confidential bids, and approval of the amounts of such bids, has not been exempted under the FOIA as currently drafted. Whether the process required to approve and submit confidential bids should be exempted from the FOIA is a public policy decision that must be made by the General Assembly and not by this court. *Rehab Hospital, supra,* was decided in 1985, and *El Dorado, supra,* was decided in 1976. The legislature could have acted in the intervening years to alter the FOIA, but has not done so to date. We must await legislative action before we can hold differently than in the present case. *See, e.g., Burkett v. PPG Indus., Inc.,* 294 Ark. 50, 740 S.W.2d 621 (1987).

■ We also note that Harris asks this court to reverse the denial of his motion for summary judgment. The denial of a motion for summary judgment is not appealable. *Murphy Oil USA, Inc. v. Unigard Sec.,* 347 Ark. 167, 61 S.W.3d 807 (2001). Finally, we note that Harris sought an injunction and attorney's fees in his

complaint and sought similar relief in his motion for summary judgment. However, again, Harris's motion for summary judgment was denied, and the City's motion for summary judgment was granted. Therefore, the issues of the injunction and fees were neither considered nor ruled on by the circuit court. With certain exceptions not relevant to this discussion, this court has appellate jurisdiction only, which means that it has jurisdiction to review an order or decree of a circuit court. *Lewellen v. Sup. Ct. Comm. on Prof'l Conduct*, 353 Ark. 641, 110 S.W.3d 263 (2003). There is no order or decree to review on the issues of an injunction or attorney's fees. This case is reversed and remanded for action consistent with this opinion.

THORNTON, J., not participating.

Special Justice BRENT STANDRIDGE joins.