2012 Ark. 452

Joey McCUTCHEN, Appellant

v.

CITY OF FORT SMITH, Arkansas; Dennis Kelly; Gary Campbell; Andre' Good; and Ken Pyle, Appellees.

No. 11–1086.

Supreme Court of Arkansas.

Dec. 6, 2012.

McCutchen and Sexton, Fort Smith, by: Joey McCutchen, for appellant.

Daily & Woods, P.L.L.C., Fort Smith, by: Jerry L. Canfield and Wyman R. Wade, Jr., for appellees.

Lucy A. Dalglish; and Quattlebaum, Grooms, Tull & Burrow PLLC, Little Rock, by: John E. Tull III, E.B. Chiles IV, and Amber Davis–Tanner, for amici curiae The Reporters Committee for Freedom of the Press and the Arkansas Press Association.

Dustin McDaniel, Att'y Gen., by: Colin R. Jorgensen, Ass't Att'y Gen., for amicus curiae the State of Arkansas.

JIM HANNAH, Chief Justice.

Appellant Joey McCutchen appeals the Sebastian County Circuit Court's order dismissing his complaint against appellees, City of Fort Smith (the "City"), Dennis Kelly, Gary Campbell, Andre Good, and Ken Pyle, in this case involving provisions of the Arkansas Freedom of Information Act (the "FOIA"), codified at Arkansas Code Annotated sections 25–19–101 to –110 (Repl.2002 & Supp.2011). Appellant contends that the circuit court erred in concluding that Kelly did not violate the open-meetings provision of the FOIA when he presented to individual Board members, in advance of a study session, a memorandum expressing his opinion on a proposed ordinance that might come before the Board. Appellant claims that the circuit court's ruling is inconsistent with this court's decision in *Harris v. City of Fort Smith*, 359 Ark. 355, 197 S.W.3d 461 (2004). Appellees contend that this court should overrule the decision in *Harris*. In addition, both appellant and appellees challenge findings of fact and conclusions of law relating to the circuit court's grant of declaratory relief in favor of appellees, in which it concluded that the FOIA's open-meetings provision, Arkansas Code Annotated section 25–19–106, and the FOIA's criminal provision, Arkansas Code Annotated section 25–19–104, are unconstitutional. We affirm in part and reverse in part.

The City, which operates with a city-administrator form of municipal government, is governed by a Board of Directors (the "Board") consisting of seven directors. The Board meets in regular, study, and special meetings. Typically, at regular meetings, the Board considers three to seven regular items of business and ten to twenty-five consent-agenda items of business. Prior to each meeting, each member of the Board is provided an agenda and informational package of documents containing a briefing report for each item and a draft resolution or ordinance for each item. After delivery to the Board members, the information packets, as public documents, are made available to any member of the press or public who requests a copy. The documents are also available on the City's website.

The Board employs a City Administrator, who performs various duties in operating the City. During his first year as City Administrator, Kelly[1] evaluated existing City employment positions and personnel for the purpose of analyzing the City's administrative organization. Kelly discovered that, while he did not have the authority to hire or fire department heads, the city-administrator form of government would permit the Board to assign that authority to him.

Kelly prepared a memorandum, draft ordinance, and other documents (collec-

---

1. Kelly was hired as City Administrator effective October 20, 2008. His employment as City Administrator was terminated by vote of the Board on November 2, 2010.

tively referred to as "memorandum") proposing that the City Administrator be given the authority to hire or fire certain specified department heads, without Board approval. Kelly delivered the memorandum to five of the seven members of the Board in advance of a study session of the Board, at which the proposed ordinance would be discussed but not voted on. When delivering the memorandum, Kelly spoke with the Board members. Two members of the Board expressed to Kelly their preliminary support for the measure, and two members of the Board expressed their disfavor with the proposal.

The memorandum was discussed by the Board at a study session held in an open public meeting on May 12, 2009. Pursuant to the agenda procedures for the City, the request of two Board members was required to place an item on the agenda of a regular meeting for consideration by the Board. No motion was made for Kelly's proposed ordinance to be placed on the agenda of the regular meeting.

Appellant filed suit against the City, and after amendment, he alleged that, by engaging in a series of private one-on-one meetings with Board members, in an attempt to influence the decisions of the Board, Kelly knowingly violated the open-meetings provision of the FOIA.[2] He further alleged that the meetings between Kelly and the Board members were improper because they were held in a private forum, without notice being given to the public, and that members of the public were neither invited nor permitted to attend. Appellant requested that the circuit court enter declaratory relief, stating,

> (1) private serial one-on-one meetings between the City Administrator and the Board members, which have the purpose

or effect of influencing the decision making of the Board, are in violation of the FOIA; (2) that the FOIA prohibits the City Administrator from providing in advance to Board members information regarding proposed legislative matters coming before the Board by multiple contact with one or members at a time through personal meetings, telephone calls, or other communication in a manner prohibited by *Harris v. City of Fort Smith,* 359 Ark. 355, 197 S.W.3d 461 (2004); (3) that *Harris v. City of Fort Smith* remains valid and viable and is controlling regarding serial one-on-one meetings between the City Administrator and the Board; and (4) that the limitations set forth in *Harris v. City of Fort Smith* are constitutional, are presumed constitutional, and are a valid restriction upon the rights of the City under the First Amendment of the United States Constitution and the Arkansas Constitution.

Kelly, Board members Gary Campbell and Andre Good, and Ken Pyle, a citizen of Fort Smith and Executive Director of the Fort Smith Housing Authority, filed a motion to intervene, and the circuit court granted their motion. In an amended counterclaim for declaratory relief, the City and the Intervenors contended that the circuit court should enter an order declaring

> (a) that, in spite of [decisions of the Arkansas Supreme Court] and numerous Attorney General opinions, the FOIA does not provide a definition of the word "meeting" so that the ordinary meaning requiring the presence of at least two members of the subject governing body is controlling thereby re-

---

2. Appellant later added David Harris as a co-plaintiff. Harris participated at trial, but he

is not a party to this appeal.

sulting in the declaration that the following topics are legislative topics for consideration by the Arkansas General Assembly and not the executive or judicial branches of government in Arkansas: (1) a meeting cannot occur in the absence of at least two members of the subject governing body present; (2) the number of members of a subject governing body which must be present in order for there to be a meeting; (3) whether citizen contact with one or more members of a subject governing body is a meeting; (4) whether administrative staff contact for informational purposes with one or more members of a governing body is a meeting; (5) whether staff contact for any purpose, including serving as a "straw man" at the request of one of more members of the subject governing body, is a meeting; (6) whether the receipt of information or communication between one or more members of a board of directors is a meeting; (7) whether the receipt of information or communication between one or more members of a board of directors by a telephone is a meeting; and (8) whether the receipt of information and potential forms of legislative resolutions and ordinances by pre-meeting packets of information is a meeting.

The City and the Intervenors also sought declarations that, in the absence of clarification by Arkansas law by declaration of the type identified in (a) above, (b) the decisions of the Arkansas Supreme Court and Arkansas Attorney General applying the FOIA are in violation of the Arkansas constitutional provisions regarding separation of powers as set forth in article 4, sections 1 and 2 of the Arkansas Constitution; (c) the FOIA, as applied, violates the free speech rights guaranteed by article 2, section 6 of the Arkansas Constitution and the First Amendment to the Consti-

tution of the [United States]; (d) the FOIA, as applied, is unconstitutionally vague and violates the due process of law protections of the Fifth Amendment and the Fourteenth Amendment to the United States Constitution and article 2, section 8 of the Arkansas Constitution; and (e) the FOIA is overly broad and reaches multiple areas of speech beyond that which is necessary to protect and promote the Arkansas interest in openness of government and public meetings so that the FOIA as applied is determined to violate the Arkansas Constitution and the United States Constitution because of its overbreadth.

The City further sought declarations that (f) the criminal provision of the FOIA is facially unconstitutional because of its vagueness and violates the First, Fifth, and Fourteenth Amendments to the United States Constitution and the provisions of article 2, sections 6 and 8 of the Arkansas Constitution. In particular, the criminal provision provides no guidance or instruction as to when a member of a subject governing body could be found guilty of violating the provision, provides no direction as to whether criminal intent is required, and by use of the word "negligent" leaves uncertain as to when and how a violation might occur by a member of a governing body; (g) the uncertainty with reference to the meaning and application of the FOIA has had and continues to have a chilling effect on the City and the Intervenors, as well as members of the public, with reference to the governmental activities of the City; and (h) the individual intervenors are adversely affected by the uncertain meaning and application of the FOIA and the unconstitutional declarations requested by (b) through (f) are applicable to each individual intervenor.

On August 8–9, 2011, the case was heard in a bench trial before the circuit court. Subsequently, the circuit court entered an order containing numerous findings of facts and conclusions of law, determining, inter alia:

No violation of the public meeting provisions of the FOIA occurred with reference to City Administrator Kelly's presentation of the May 7, 2009 memorandum to individual members of the Board of Directors in advance of the study session held on May 12, 2009.

In Conclusion of Law No. 59, the circuit court ruled,

The court finds that the following topics are legislative topics for consideration by the Arkansas General Assembly and not the executive or judicial branches of government in Arkansas: (1) the number of members of a subject governing body which must be present in order for there to be a meeting; (2) whether citizen contact with one or more members of a subject governing body is a meeting; (3) whether administrative staff contact for informational purposes with one or more members of a governing body is a meeting; (4) whether administrative staff contact for any purpose, including serving as a "straw man" at the request of one or more members of the subject governing body, is a meeting; (5) whether the receipt of information or communication between one or more members of a board of directors by electronic means is a meeting; (6) whether the receipt of information or communication between one or more members of a board of directors by telephone is a meeting; and (7) whether the receipt of information and potential forms of legislative resolutions and ordinances by pre-meeting packets of information is a meeting.

The circuit court further ruled that, in the absence of clarification of Arkansas law by declaration of the type identified in Conclusion of Law No. 59, the FOIA, as applied, violates the free-speech rights guaranteed by article 2, section 6 of the Arkansas Constitution and the First Amendment to the United States Constitution; is unconstitutionally vague and violates the due process of law protections of the Fifth Amendment and the Fourteenth Amendment to the United States Constitution and article 2, section 8 of the Arkansas Constitution; and is overbroad and reaches multiple areas of speech beyond that which is necessary to protect and promote the Arkansas interest in openness of government and public meetings so that the FOIA as applied is determined to violate the Arkansas Constitution and the United States Constitution because of its overbreadth. The circuit court further concluded that the criminal provision of the FOIA is facially unconstitutional because of its vagueness and that it violates the First, Fifth, and Fourteenth Amendments to the United States Constitution and the provisions of article 2, sections 6 and 8 of the Arkansas Constitution.

Appellant filed a motion for retrial and reconsideration, which was denied by the circuit court. Appellant then filed a timely notice of appeal, and the City subsequently filed a timely notice of cross-appeal.

Appellant contends that the circuit court erred in concluding that Kelly did not violate the open-meetings provision of the FOIA when he presented to individual Board members, in advance of a study session, a memorandum expressing his opinion on a proposed ordinance that was to come before the Board. Appellant contends that the court's decision in *Harris* makes clear that the FOIA prohibits serial, one-on-one meetings between the City Administrator and members of the Board

if the meetings have the purpose or effect of influencing the decision making of the Board. He further contends that, pursuant to the FOIA, the City Administrator may not provide "in advance to the members of the governing body of the City of Fort Smith information regarding proposed legislative matters coming before the governing body of Fort Smith by multiple contact with one or more members at a time through personal meetings, telephone calls, or other communication in a manner prohibited by *Harris.*"

■ ⌐₈This court liberally construes the FOIA to accomplish its broad and laudable purpose that public business be performed in an open and public manner. *See Ark. Dep't of Fin. & Admin. v. Pharmacy Assocs., Inc.,* 333 Ark. 451, 970 S.W.2d 217 (1998); *Laman v. McCord,* 245 Ark. 401, 432 S.W.2d 753 (1968). The open-meetings provision of the FOIA provides in pertinent part that "all meetings, formal or informal, special or regular, of the governing bodies of all municipalities . . . shall be public meetings." Ark.Code Ann. § 25–19–106(a).

In *Harris,* Fort Smith Deputy City Administrator Ray Gosack learned that a bank was going to sell at auction property formerly owned by the Fort Biscuit Company. In a memorandum to City Administrator Bill Harding, Gosack stated that "[a]cquiring this property through an auction creates unusual challenges for the city," and he explained that the normal procedure for seeking Board approval prior to acquisition meant that the information regarding the maximum bid the City could offer would be public information, making competitive bidding impossible. *Harris,* 359 Ark. at 359, 197 S.W.3d at 463. Harding contacted each Board member, either in person or by telephone, to gain approval to bid and to gain approval of bid amounts. The City acquired the property at auction and thereafter the Board held a "Special Meeting & Study Session" and passed a resolution approving the purchase. David Harris filed suit against the City, alleging that the one-on-one meetings between Harding and the Board members violated the FOIA. The circuit court granted summary judgment in favor of the City, and this court reversed and remanded, holding that under the facts of the case, "contact of individual Board members by the City Administrator to obtain approval of action to be taken by the Board as a whole constituted an informal ⌐₉Board meeting subject to the FOIA." 359 Ark. at 358, 197 S.W.3d at 463.

Appellant contends that, pursuant to our holding in *Harris,* Kelly's actions constituted a violation of the FOIA. Here, Kelly prepared a memorandum about a proposed ordinance and delivered it to individual Board members. The memorandum stated:

> SUBJECT: Proposed Amendment to the Fort Smith Code of Ordinances and to the Rules and Regulations of the Civil Service Commission Regarding Exempt Employees.

The following is the opening paragraph of section 2–43 of the city code titled, "director approval procedure of city administrator personnel action."

> "Except as otherwise provided in this article, the city administrator shall obtain the approval of the board of directors prior to the employment or discharge of exempt personnel of the city who are heads of departments, city clerk, secretary to the board and the qualified and licensed attorneys at law contracted to provide legal services pursuant to section 2–1:11–2–1:13 of this code as follows: . . . ."

The above cited section of the city code is basically interpreted by the city administrator as not having "hire-fire au-

thority" over department heads and other various officers within the city's organization. Prior to completing the city's organization analysis the city administrator has determined it necessary to solicit changes to the hire/fire authority of department heads such that they would come directly under the authority of the city administrator without board of director approval.

Therefore it is recommended that the attached ordinance amending section 2-43 be approved by the board of directors as recommended by the city administrator such that it would change the hire/fire authority of the city administrator to the extent the administrator would not be required to bring personnel actions regarding department heads to the board relative to hiring or termination. In order to make this change for all department heads it is necessary to obtain approval from the civil service commission regarding the police chief and fire chief relative to their rules and regulations. The city attorney has drafted the necessary language to amend the civil service rules and regulations relative to this hire/fire authority request. Once the board of directors has taken action on this matter for all department heads then the two specific positions of police chief and fire chief would be carried forward to the civil service commission requesting the same action from them.

This recommendation affects all department heads with the following exceptions: city attorney, city clerk, internal auditor and the city prosecutor.

This is the last step the city administrator needs in order to complete the organizational analysis and bring it to the board within the next few weeks. The city administrator strongly recommends these changes and will be prepared to discuss with each board member the various changes and answer any questions you have regarding this matter.

Kelly's deposition testimony was admitted at trial. He testified that he gave the memorandum to five of the seven Board members on May 7–8, 2009, in advance of the study session on May 12. He stated that the only discussions he had with them was when he handed them the memorandum and said, "Here's the policy. If you have any questions, give me a call." [3] Kelly stated that Director Cole Goodman came by his office to pick up the memorandum. According to Kelly, when he handed Goodman the memorandum, Goodman said, "I'm all for it" and then left. Kelly stated that, aside from what was discussed at the study session on May 12, he had no further conversations with Goodman about the hire-fire policy or the memorandum.

Kelly testified that Director Gary Campbell was unable to come to his office to pick up the memorandum, so he delivered it to Campbell at his home. Kelly said that, as he handed Campbell the memorandum, he told him that it was his recommendation regarding a change in the hire-fire policy, and Campbell told him he would support the change. Kelly testified that, aside from discussions at the May 12 study session, he and Campbell had no other conversations regarding the memorandum.

Kelly testified that after he called Director Andre Good and told him that the memorandum was ready for him to pick up, Good came to his office, picked up the

---

**3.** Kelly testified that, when they received the memorandum, Board members were aware that he had been working on a proposal to amend the hire-fire policy because the issue had come up during his job interview for City Administrator and during a Board retreat that was open to the public and the media.

memorandum, thanked him, and left. Kelly said that the only conversations he had with Good about the policy occurred in a public meeting. Kelly stated that Director Steve Tyler came to his office to pick up the memorandum and that their only discussion of the policy occurred at the study session on May 12.

Kelly testified that when Director Kevin Settle came up to pick up the memorandum at Kelly's office, they did not have a conversation about the memo. Kelly stated that, "roughly thirty seconds" before the study session on May 12 began, Settle told him, "Dennis, I just want you to know I can't support this." Kelly said he responded, "That's fine. You know, that's your call, whatever you want to do."

At trial, Campbell testified that, when Kelly brought him the memorandum, he did not recollect that Kelly said anything indicating that he was polling the Board to see how the Board members would vote on the issue. Good testified that, when he picked up the memorandum at Kelly's office, Kelly did not ask him for his opinion on the proposal or ask him how he was going to vote on the proposal.

The facts in the present case are distinguishable from the facts in *Harris*. In *Harris*, the one-on-one meetings between the City Administrator and the Board members ran afoul of the FOIA because the purpose of the meetings was to obtain approval of action to be taken |₁₂by the Board as a whole. In that case, the City Administrator contacted Board members to determine whether the Board would approve the purchase of land at a subsequent meeting if he were to make a successful bid at a public auction. In this case, the purpose of Kelly's memorandum was to provide background information on

an issue that would be discussed at an upcoming study session.

■ We recognize that Kelly recommended in the memorandum that Board members pass the proposed ordinance and that some Board members voluntarily stated their positions to Kelly, but Kelly did not solicit responses from Board members in the memorandum, and there is no evidence that the issue was discussed or debated prior to the study session. Furthermore, there is no evidence that the Board members exchanged any correspondence about the memorandum. We hold that the circuit court did not err in concluding that Kelly did not violate the open-meetings provision of the FOIA when he presented to individual Board members, in advance of a study session, a memorandum expressing his opinion on a proposed ordinance that might come before the Board.

We next turn to the circuit court's grant of declaratory relief in favor of appellees and appellant's and appellees' arguments regarding the constitutionality of the FOIA's open-meetings provision[4] and criminal provision. The circuit court concluded that, because Fort Smith administrative officials, members of the Board, and citizens are uncertain about the application of the FOIA to informational exchanges in the form of meeting-agenda packages, |₁₃telephone conversations, e-mail communications, citizens' participation, and "straw man" discussions, there was a genuine dispute and judicial controversy among the parties as to the meaning and proper application of the FOIA. In Conclusion of Law No. 59, the circuit court ruled,

The court finds that the following topics are legislative topics for consideration

4. We disagree with appellees' contention that the circuit court did not find Arkansas Code Annotated section 25–19–106 unconstitution-

al. A review of the circuit court's order reveals that the circuit court did indeed find the statute unconstitutional.

by the Arkansas General Assembly and not the executive or judicial branches of government in Arkansas: (1) the number of members of a subject governing body which must be present in order for there to be a meeting; (2) whether citizen contact with one or more members of a subject governing body is a meeting; (3) whether administrative staff contact for informational purposes with one or more members of a governing body is a meeting; (4) whether administrative staff contact for any purpose, including serving as a "straw man" at the request of one or more members of the subject governing body, is a meeting; (5) whether the receipt of information or communication between one or more members of a board of directors by electronic means is a meeting; (6) whether the receipt of information or communication between one or more members of a board of directors by telephone is a meeting; and (7) whether the receipt of information and potential forms of legislative resolutions and ordinances by pre-meeting packets of information is a meeting.

The circuit court concluded that, in the absence of clarification of Arkansas law by declaration of the type identified in Conclusion of Law No. 59, the FOIA, as applied, violates the free-speech rights guaranteed by article 2, section 6 of the Arkansas Constitution and the First Amendment to the United States Constitution; is unconstitutionally vague and violates the due process of law protections of the Fifth Amendment and the Fourteenth Amendment to the United States Constitution and article 2, section 8 of the Arkansas Constitution; and is overbroad and reaches multiple areas of speech beyond that which is necessary to protect

and promote the Arkansas interest in openness of government and public meetings so that the FOIA as applied is determined to violate the Arkansas Constitution and the United States Constitution because of its overbreadth. The circuit court also concluded ⌊14that the criminal provision[5] of the FOIA is facially unconstitutional because of its vagueness and that it violates the First, Fifth, and Fourteenth Amendments to the United States Constitution and the provisions of article 2, sections 6 and 8 of the Arkansas Constitution.

■ Declaratory judgments are used to determine the rights and liabilities of respective parties. *Nelson v. Ark. Rural Med. Practice Loan & Scholarship Bd.*, 2011 Ark. 491, 385 S.W.3d 762. The purpose of the declaratory-judgment statutory scheme "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Ark.Code Ann. § 16–111–102(b) (Repl.2006). Pursuant to Arkansas Code Annotated section 16–111–104 (Repl. 2006),

> [a]ny person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

■ To obtain declaratory relief, the requisite precedent facts or conditions generally held to be required include:

> (1) a justiciable controversy, that is to say, a controversy in which a claim of

---

**5.** Arkansas Code Annotated section 25–19–104 states that "[a]ny person who negligently

violates any of the provisions of [the FOIA] shall be guilty of a Class C misdemeanor."

right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy; in other words, a legally protectable interest; and (4) the issue involved in the controversy must be ripe for judicial determination.

*MacSteel Div. of Quanex v. Ark. Okla. Gas Corp.*, 363 Ark. 22, 35, 210 S.W.3d 878, 886 (2005) (quoting *Andres v. First Ark. Dev. Fin. Corp.*, 230 Ark. 594, 606, 324 S.W.2d 97, 104 (1959)). As we said in *Cummings v. City of Fayetteville*, 294 Ark. 151, 154–55, 741 S.W.2d 638, 639–40 (1987):

> The Declaratory Judgment Statute is applicable only where there is a present actual controversy, and all interested persons are made parties, and only where justiciable issues are presented. It does not undertake to decide the legal effect of laws upon a state of facts which is future, contingent or uncertain. A declaratory judgment will not be granted unless the danger or dilemma of the plaintiff is present, not contingent on the happening of hypothetical future events; the prejudice to his position must be actual and genuine and not merely possible, speculative, contingent, or remote.

The findings contained in Conclusion of Law No. 59 are premised on the determination that, in the situations described therein, the applicability of the FOIA is a matter of public policy that should be left to the General Assembly. As we understand appellees, they contend that, because the FOIA does not contain a statutory definition of "meeting," if a certain set of facts is not specifically described in the open-meetings provision of the FOIA, then neither the open-meetings provision nor the criminal provision applies to those facts.

The legislature has the power and responsibility to proclaim the law through statutory enactments, and the judiciary has the power and responsibility to interpret legislative enactments. *See, e.g., Dep't of Human Servs. and Child Welfare Agency Review Bd. v. Howard*, 367 Ark. 55, 238 S.W.3d 1 (2006). Moreover, public policy is for the General Assembly to establish, not the courts. *E.g., Carmody v. Raymond James Fin. Servs., Inc.*, 373 Ark. 79, 281 S.W.3d 721 (2008). When the General Assembly passed the FOIA in 1967, it made clear the policy of this state:

> It is vital in a democratic society that public business be performed in an open and public manner so that the electors shall be advised of the performance of public officials and of the decisions that are reached in public activity and in making public policy. Toward this end, this act is adopted, making it possible for them, or their representatives, to learn and to report fully the activities of their public officials.

Freedom of Information Act of Feb. 14, 1967, No. 93, § 2, 1967 Ark. Acts 208, 209; Ark.Code Ann. § 25–19–102. In *Arkansas Gazette v. Pickens*, 258 Ark. 69, 74–75, 522 S.W.2d 350, 353 (1975), we noted that,

> [w]hen the General Assembly used the expression "to learn and to report *fully* [our emphasis] the activities of their public officials," it meant not only the action taken on particular matters, but likewise the reasons for taking that action. Actually, public knowledge of the reasons can well result in a board decision being more acceptable or palatable; to the contrary, decisions rendered in secret, the reasons not being known, can well result in perhaps unjustified criticism of a board. Is not the public entitled to know *why* a board adopts certain rules or regulations? The "why" is the essence of the action taken.

The FOIA does not attempt to give an exact description of every conceivable fact situation that might give rise to the application of the FOIA. It is left to the judiciary to give effect to the intent of the legislature, and in our prior decisions construing the FOIA, we have given effect to that intent. *See, e.g., Ark. Okla. Gas Corp. v. MacSteel Div. of Quanex,* 370 Ark. 481, 262 S.W.3d 147 (2007) (concluding that the open-meetings provision of the FOIA was not violated where county judge asked quorum court members if they understood the agenda and where there was no evidence that business acted in any capacity other than its own when it contacted quorum court members); *Harris, supra* (holding that contact of individual Board members by the City Administrator to obtain approval of action to be taken by the Board as a whole constituted an informal Board meeting subject to the FOIA); *Nat'l Park Med. Ctr., Inc. v. Ark. Dep't of Human Servs.,* 322 Ark. 595, 911 S.W.2d 250 (1995) (holding that open-meetings law was inapplicable to staff meetings of the Arkansas Department of Human Services); *Rehab Hosp. Servs. Corp. v. Delta–Hills Health Sys. Agency, Inc.,* 285 Ark. 397, 687 S.W.2d 840 (1985) (noting that telephone poll of the Executive Committee violated the FOIA where there was no emergency and no emergency notice to the press); *El Dorado Mayor v. El Dorado Broad. Co.,* 260 Ark. 821, 544 S.W.2d 206 (1976) (affirming trial court's order that the FOIA applies to any group meeting called by the mayor or any member of the city council at which members of the city council, less in number than a quorum, meet for the purpose of discussing or taking action on any matter on which foreseeable action will be taken by the city council); *Pickens, supra* (holding that, when a committee of a board meets for the transaction of business, this is a public meeting subject to the provisions of the FOIA).

After reviewing the circuit court's findings of facts and conclusions of law regarding the constitutionality of the FOIA's open-meetings provision and criminal provision, which were entered at appellees' urging, it is evident to this court that appellees have an argument with the legislature, but not one that amounts yet to a case or controversy that should be decided by a court. *See Cummings, supra.* Moreover, the record reveals that the City recognized that its argument was with the legislature. Gary Campbell testified that, after this court's decision in *Harris* in 2004, he volunteered to meet with representatives of the press and the Arkansas Municipal League to see if the groups could work together to improve the FOIA. He said that the groups met to discuss the Act and that Ray Gosack had prepared some information regarding FOIA laws in surrounding states. Campbell said that, while the groups agreed to have another meeting to continue the discussion, the second meeting never occurred. Campbell testified that it was his impression that the press group had no interest in going to the General Assembly to address concerns with the FOIA. Apparently, the City then abandoned its attempt to amend the FOIA. Gosack testified that the City did not propose any changes to the FOIA in 2005 and that in 2007, 2009, and 2011, no action was taken by the City to cure the City's problems with the FOIA. Kelly stated in deposition testimony that "[s]tates all over the country have ... FOIA laws and they have criteria and it wouldn't be difficult for the Arkansas legislature to go back ... and basically adopt those criteria." Kelly also testified that he had not taken any action with his legislator to get the FOIA clarified because he "just [hasn't] had time."

Instead of taking their argument to the legislature, appellees sought—and re-

ceived—a legal opinion from the circuit court rather than the resolution of an actual controversy. We have long held that courts do not sit for the purpose of determining speculative and abstract questions of law or laying down rules for future conduct. *E.g., Cancun Cyber Cafe & Bus. Ctr., Inc. v. City of North Little Rock,* 2012 Ark. 154, 2012 WL 1223791. Because no legal controversy exists in the City's petition for declaratory relief, we hold that the circuit court erred in concluding that the City was entitled to declaratory relief. Accordingly, we reverse (1) the findings of fact and conclusions of law relating to the circuit court's determination that sections 25–19–104 and 106 are unconstitutional, and (2) the findings of fact and conclusions of law that are irrelevant to the circuit court's determination that Kelly's actions did not constitute a violation of the FOIA.[6]

Finally, appellees contend that this court should overrule the *Harris* decision because it constitutes a judicial encroachment on a legislative function. According to appellees, the *Harris* court's "reliance on a circumvention public policy declared judicially, and not by the legislature, is misplaced."

 There is a strong presumption of the validity of prior decisions, and it is necessary, as a matter of public policy, to uphold prior decisions unless great injury or injustice would result. *E.g., Cochran v. Bentley,* 369 Ark. 159, 251 S.W.3d 253 (2007). The policy behind stare decisis is to lend predictability and stability to the law. *Id.* In matters of practice, adherence by a court to its own decisions is necessary and proper for the regularity and uniformity of practice, and that litigants may know with certainty the rules by which they must be governed in the conducting of their cases. *Id.* Precedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable. *Id.*

 In addition, any interpretation of a statute by this court subsequently becomes a part of the statute itself. *E.g., Pifer v. Single Source Transp.,* 347 Ark. 851, 69 S.W.3d 1 (2002). The General Assembly is presumed to be familiar with the appellate courts' interpretation of its statutes, and if it disagrees with those interpretations, it can amend the statutes. *E.g., Tyson Poultry, Inc. v. Narvaiz,* 2012 Ark. 118, 388 S.W.3d 16. Without such amendments, however, the appellate courts' interpretations of the statutes remain the law. *Id.*

In *Harris,* we construed the open-meetings provision of the FOIA to give effect to the intent of the legislature that public business be performed in an open and public manner. Although aware of our decision in *Harris,* the legislature has not amended the open-meetings provision of the FOIA to indicate that our interpretation in *Harris* was in error. Appellees' discontent with our decision in *Harris* is not a compelling reason to overrule precedent. Therefore, we decline to do so.

Affirmed in part, reversed in part.

---

6. Specifically, we reverse the following findings of fact: 1–4, 17–20, 30–32, 35, 36, 38–59, 61–74, and 78, and we reverse the following conclusions of law: 3, 4, 7–9, 11, 12, and 14–65.