Cite as 2023 Ark. App. 408

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-22-210

|  |  |
|---|---|
| KRISTIN KITCHENS<br>        APPELLANT/CROSS-APPELLEE<br><br>V.<br><br><br>CITY OF FORT SMITH AND SHERRI GARD<br>        APPELLEES/CROSS-APPELLANTS | Opinion Delivered September 27, 2023<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66FCV-21-927]<br><br>HONORABLE GREG MAGNESS, JUDGE<br><br>AFFIRMED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL |

## N. MARK KLAPPENBACH, Judge

Kristin Kitchens appeals from the order of the Sebastian County Circuit Court finding that the City of Fort Smith and City Clerk Sherri Gard (the City) did not violate the open-meeting provisions of the Arkansas Freedom of Information Act (FOIA). On appeal, Kitchens contends that FOIA was violated by Gard's act of contacting each member of the City's board of directors to determine whether they concurred in the removal of an item from the agenda of an upcoming board meeting. The City has filed a cross-appeal from the circuit court's denial of its request for attorney's fees. We affirm on direct appeal and affirm on cross-appeal.

The City, which operates with a city-administrator form of municipal government, is governed by a board of directors (the Board) consisting of seven members. On November 12, 2021, City Administrator Carl Geffken sent an email to the Board stating that "[w]e are finalizing the agenda packet today for the November 16 meeting." The email stated in part as follows:

> The 0.75% sales tax that ends on December 31, 2022 is also on the agenda as item #4A. Item 4B is the ordinance calling for a special election. However, I believe that some Board members are interested in allocating the 0.75% between Police/Fire (0.125%), Parks (0.125%), and Sewer (0.50%) and other Board members are interested in allocating the 0.75% between Police/Fire (0.125%) and Sewer (0.625%). Since there are different opinions and since we do not want the this [sic] topic to be bandied about in such a way that could deflect from the ultimate decision of the Board, there are three options to consider.
>
> The first option is to have the two choices placed on the agenda as items 4 A1 and 4 A2. The second option is to place one of the ordinances on the agenda and then amend it.
>
> The third option is to table item 4 in its entirety and place it on a special meeting agenda before November 30. This would allow the Board to consider the options further and then discuss and vote on the 0.75% sales tax then.
>
> Since the opinions are not clear, I will be placing both ordinances on the agenda.

A few hours after Geffken's email was sent, Director Lavon Morton contacted City Clerk Sherri Gard and requested that Option B be removed from the agenda pursuant to section 2-31(4) of the Fort Smith Municipal Code.[1] This section states that "Any item of business may be denied a place on or removed from the agenda by notice of four directors

---

[1]Option B was identified as the proposal allocating the tax between Parks, Police/Fire, and Sewer. Option A was identified as the proposal allocating the tax between only Police/Fire and Sewer.

2

to the city clerk prior to the date of the meeting of the proposed consideration. The city clerk shall immediately notify the city administrator, the mayor, the directors and other interested persons of such action." Gard then contacted the other six directors by phone to ask if they concurred with the removal of Option B. Ultimately, four of those directors concurred, and two did not. Approximately two hours after the request was made by Morton, Gard emailed the directors, the media, and other interested parties announcing that Option B had been removed from the agenda pursuant to section 2-31(4) and listing the directors' positions on the removal.[2]

At the November 16 Board meeting, Option A was discussed and ultimately amended three times before being adopted. The ordinance was amended to specify that the allocation for "Sewer" was dedicated to work required by a consent decree; to allocate the remaining portion to only the police department and not the fire department; and to levy the tax for ten years as opposed to twenty years. During the discussion, Director Kevin Settle, who had not concurred in the removal of Option B, spoke in favor of an allocation to the parks department. However, he stated at the meeting that he knew such a proposal got pulled, and he was not going to try to amend it and put it back on the agenda because he knew the Board did not want that.

---

[2]Gard testified at trial that while this email was intended to go to the media, she accidentally used the wrong email distribution group that included other interested parties, including Kitchens's attorney.

3

On December 6 and 7, 2021, Kitchens filed a complaint and an amended complaint against the City alleging a violation of FOIA's open-meeting provisions and seeking declaratory and injunctive relief. Kitchens alleged that the process by which Option B was removed from the agenda constituted "secret serial meetings" and was a "disguised vote" on each proposed ordinance, which FOIA requires to be done in a public forum. The City denied the allegations, stating in part that it was a mischaracterization to state that the City's agenda-formulating procedures involved a "vote." The circuit court subsequently granted Gard's motion to intervene in the suit, and a trial was held on December 15, 2021.

Gard, Geffken, three directors, and Kitchens testified at the trial. Director Settle testified that the parks allocation was very important to him, and when he spoke at the meeting, he was hoping other directors would be interested in having a discussion, but they were not. He testified that he could have made an amendment to allocate a portion of the tax to parks, but he did not. He denied knowing what the outcome would be but said that his statement that he knew "the Board doesn't wish that" was because of the concurrence in the removal of Option B. The circuit court ruled that the City did not violate FOIA. The court found that although a series of phone conversations with Board members can constitute a meeting within the meaning of FOIA, the phone calls here did not rise to the prohibitions found in prior caselaw. The court subsequently denied the City's motion for attorney's fees.

We employ the clearly erroneous standard in reviewing a circuit court's findings of fact in a bench trial. *Bradshaw v. Fort Smith Sch. Dist.*, 2017 Ark. App. 196, 519 S.W.3d 344.

4

A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, considering all the evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.* A circuit court's conclusions on questions of law are reviewed de novo and given no deference on appeal. *Id.*

FOIA is to be liberally construed to accomplish its broad and laudable purpose that public business be performed in an open and public manner. *McCutchen v. City of Fort Smith*, 2012 Ark. 452, 425 S.W.3d 671. The open-meetings provision of FOIA provides in pertinent part that "all meetings, formal or informal, special or regular, of the governing bodies of all municipalities . . . shall be public meetings." Ark. Code Ann. § 25-19-106(a) (Supp. 2023). FOIA does not attempt to give an exact description of every conceivable factual situation that might give rise to the application of FOIA. *McCutchen*, *supra*. It is left to the judiciary to give effect to the intent of the legislature, and in our prior decisions construing FOIA, we have given effect to that intent. *Id.*

In *Harris v. City of Fort Smith*, 359 Ark. 355, 197 S.W.3d 461 (2004), the city administrator had one-on-one discussions with individual members of the board of directors to determine whether the board would approve the purchase of land at a subsequent meeting if he made a successful bid at a public auction. The supreme court held that under the facts of the case, contact of individual board members by the city administrator to obtain approval of action to be taken by the board as a whole—the purchase of land—constituted an informal board meeting subject to FOIA.

Kitchens argues that pursuant to *Harris*, a secret serial poll of all directors on an issue that may come before the Board violates FOIA. Kitchens claims that the removal of Option B from the agenda had the same result as voting it down at the public meeting, but the public was denied the right to know why the item was voted down. The City contends that the act of denying a place on the agenda for Option B did not prevent discussion of parks funding at the public meeting or bar consideration of a potential amendment to provide parks funding; thus, the agenda procedure did not involve a substantive, final legislative decision regarding that option.

In *McCutchen*, 2012 Ark. 452, 425 S.W.3d 671, the city administrator delivered to board members a memorandum recommending that the board pass a proposed ordinance, and some members stated their positions on the matter. The supreme court held that because the city administrator did not solicit responses from the members and there was no evidence that the issue was discussed or debated prior to the public meeting, there was no violation of FOIA. In *City of Fort Smith v. Wade*, 2019 Ark. 222, 578 S.W.3d 276, the city administrator and board members exchanged emails discussing several proposals. The supreme court held that although email communications are subject to FOIA's open-meeting provisions, these emails did not violate FOIA. The supreme court noted that the emails did not solicit responses from board members regarding their positions, no decisions were made on the proposals, and the proposals were subsequently discussed at public meetings.

Here, the city clerk inquired of six Board members whether they concurred with one member's request to remove an item from the agenda. There is no evidence that any inquiry

6

was made regarding the members' positions on the merits of any tax-allocation proposal, that any discussion or debate was had between members regarding the proposals, or that any decision was made regarding the proposals. The issue of how to allocate the tax, including the allocation proposed in Option B, was discussed and voted on at the public meeting. Under these circumstances, we hold that the circuit court did not clearly err in finding that the City's actions did not violate FOIA.

On cross-appeal, the City appeals the circuit court's denial of its motion for attorney's fees. The relevant statute provides that if the defendant has "substantially prevailed" in a FOIA action, "the court may assess expenses against the plaintiff only upon a finding that the action was initiated primarily for frivolous or dilatory purposes." Ark. Code Ann. § 25-19-107(d)(2) (Supp. 2023). The City argued below that the action was frivolous because controlling law was settled and that a last-minute request by Kitchens that the court invalidate the action taken at the Board meeting was for the dilatory purpose of delaying the City's action on the tax. The circuit court denied the City's motion for attorney's fees upon finding that Kitchens did not initiate the action "primarily for frivolous or dilatory purposes." The court found that "[i]t was clear from Plaintiff's testimony and from the legal arguments made by her counsel that the filing of the action was not for frivolous or dilatory purposes." Furthermore, the court found that "the area of law dealing with FOIA and agenda setting is not so well settled that the instant case was clearly frivolous."

On appeal, the City maintains that controlling FOIA law is settled and that Kitchens's complaint was without authority and filed for dilatory purposes. An award of attorney's fees

will not be set aside absent an abuse of discretion by the circuit court. *Holladay v. Glass*, 2017 Ark. App. 595, 534 S.W.3d 173. The abuse-of-discretion standard is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Id.* We agree with the circuit court that FOIA law is not so well-settled that the instant case was clearly frivolous and that Kitchens's request at the hearing did not establish that she filed the action for dilatory purposes. Accordingly, we affirm the denial of fees.

Affirmed on direct appeal; affirmed on cross-appeal.

GRUBER and BROWN, JJ., agree.

*McCutchen Sexton Napurano*, by: *Joey McCutchen* and *Stephen Napurano*, for appellant/cross-appellee.

*Daily & Woods, P.L.L.C.*, by: *Jerry L. Canfield* and *Colby T. Roe*, for appellees/cross-appellants.